## ALEXANDER BROWN *vs.* SARAH G. MACGILL AND JAMES McEVOY, TRUSTEE.

*Restraint on Alienation—Owner of Property Cannot Create a Trust for Himself, Reserving the Income, Without Liability to Creditors—Trust Created by a Woman in Contemplation of Marriage.*

While the creator of a trust of property for the benefit of a third person may lawfully prescribe that the income shall be payable to the beneficiary to the exclusion of the latter's alienees and creditors, yet when a trust is created for the benefit of the grantor and owner of the property, he cannot place the income thereof beyond the reach of his own creditors.

Nor can a woman by a deed of trust made in contemplation of marriage provide that she shall enjoy the income of her property, and that the same shall not be liable to her creditors.

The reasons upon which are based the English decisions holding that when the property of a woman is settled by her upon trusts in contemplation of marriage there may be a restraint upon alienation of the income, do not apply in this State where the property of a married woman is fully protected from the debts of her husband.

Shortly before her marriage a woman conveyed her property to a trustee to collect the rents, &c., and to pay the net income to her, the grantor, "into her own hands and not to another, whether claiming by her authority or otherwise, for her sole and separate use and upon her separate receipts without power of anticipation." After her marriage she became indebted to the plaintiff and charged her separate estate with the payment thereof. *Held*, that the trustee under the deed should be required to pay the debt due to plaintiff, out of the income of the estate in his hands.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ. (Jan. 19, 1898).

*William L. Marbury* (with whom was *Carroll T. Bond* on the brief), for the appellant.

*Bernard Carter* for the appellee, McEvoy, Trustee, submitted the cause on his brief.

Boyd, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City, dismissing the bill of complaint filed by the appellant against Sarah G. Macgill, Carroll S. Macgill, her husband, and James McEvoy, trustee. The bill alleges that on the 16th day of September, 1895, Sarah G. Macgill gave the appellant her note for the sum of two thousand dollars, which she borrowed from him with the understanding and agreement that it should be payable when demanded out of her separate estate, whether held in her own name or by the intervention of her trustee, James McEvoy, and that it was her intention and purpose to bind and charge her separate estate with the payment thereof. On the 10th day of September, 1894, which was a day or two before Mrs. Macgill, who was the widow of George B. Graham, deceased, was married to Carroll S. Macgill, she executed a deed of trust by which she assigned and conveyed to James McEvoy, trustee, all property which she had derived from the estate of George B. Graham, and which she might receive from her daughter, Isabella Brown Graham, in trust, "to collect, receive and after making all proper deductions for taxes and other charges thereon, to pay over the net rents, profits, dividends, interest and income of all said property, real, personal and mixed, to her, the said Sarah G. Graham, during her natural life, *into her own hands and not to another, whether claiming by her authority or otherwise, for her sole and separate use and upon her separate receipts without power of anticipation,* and excluding all right or interest in or power over the same of any husband she may have or any liability for his debts, contracts or engagements." It then provides for the disposition of the property after her death.

It is conceded that the debt was contracted by Mrs. Macgill with direct reference to her separate estate and that it was her intention to charge the same. The testimony on that point is ample under the decisions of this Court to charge any separate estate she had with this debt, unless there be other reasons for its exemption.

It is contended, and the learned Judge below so held, that by reason of the provisions in the deed of trust above quoted she had no power to charge or pledge the property held by James McEvoy, trustee. That being her only separate estate, so far as disclosed by the record, we are necessarily called upon to determine the effect of those provisions. Cases involving the right to place restrictions upon the alienation of property have been numerous and have resulted in a great diversity of opinions between the Courts that have passed upon the question. In England it has been persistently and steadfastly held that a gift or grant of a beneficial fee-simple or life estate, whether legal or equitable, carried with it the right of the donee or grantee, other than a married woman, to alienate the estate and charge it with his debts, and that all attempts to restrict these incidents belonging to such estates by forbidding payment of the income to any one other than the donee or grantee or prohibiting anticipation, were nugatory and without effect, except by way of cesser or limitation over of the estate. We will have occasion to consider the exception in favor of married women later on. In 23 *Am. & Eng. Ency.* 5, there is a very excellent note on the subject of Spendthrift Trusts, where it can be seen how widely the Courts of this country have differed on the main question. But it would serve no good purpose to enter into a · discussion of those cases, as this Court held in the case of *Smith* v. *Towers*, 69 Md. 77, that the founder of a trust may lawfully provide in direct terms that his property shall go to his beneficiary to the exclusion of the alienees and creditors of the latter, and accordingly it was determined that the rents and profits held by the trustee in that case, which the testator directed should be paid into the hands of his son and "not into the hands of another, whether claiming· by his authority or otherwise," could not be reached by his creditors either at law or in equity before such rents and profits were paid to him. It was conceded that the English cases, as well as many in this country, were opposed to the views adopted

by this Court, but it was held that the reasons on which was founded the rule that the right to sell and dispose of property is a necessary incident to the ownership of it, do not apply to the transfer of property *in trust.* It was said that "the donor or devisor, as the absolute owner of the property, has the right to prescribe the terms on which his bounty shall be enjoyed, unless such terms be repugnant to the law   *   *   *   *.    The creditors of the beneficiary have no right to complain because the founder of the trust did not give his bounty to them." By the will before the Court in the case of *Reid* v. *Safe Deposit and Trust Company,* 86 Md. 464, the testator left his property to trustees, who were succeeded by the appellee in that case, with directions that they should pay the net proceeds from time to time to his wife during her natural life, and especially so that the same shall not be liable for the debts or contracts of any future husband, or in any manner subject to his control, or to be taken in execution or attachment or otherwise, howsoever, and so that she shall not pledge or anticipate said property or said net proceeds of income or any part thereof." We held that by virtue of those provisions the net income from the property in the hands of the trustee was not liable for her debts and that the testator had full power to make such provisions under the decision in *Smith* v. *Towers.*

But whether one who is the owner of property can thus place it beyond his own control and power of alienation— especially beyond the reach of his creditors—presents another question. The case of *Warner* v. *Rice,* 66 Md. 436, goes very far towards denying such right. George Warner and others conveyed to a trustee certain property which had been left them by their father by a deed in which certain trusts were declared by the grantors. The property of George Warner sought to be made liable to attachment in that case had by the deed been made subject to a declaration of trust as follows : " In trust for the use and benefit of said George Warner and his immediate family, *free from*

*liability for any of his debts, contracts or engagements;* and when, if so by said trustee found requisite, by him deemed proper, to apply the uses, rents, income and profits to the support and maintenance of said George and his said family during his, said George's life," etc.   This Court held that the exemption attempted to be conferred upon the use of the property by that declaration was void and without effect, being contrary to law, and held the rents from Warner's equitable estate in the ground rents attached, liable for the plaintiff's debts.   It was said in that case that a beneficial legal estate in fee or for life could not be conveyed or devised to a person with a provision that it should not be alienated or subject to the debts of the legal owner, and it was also stated that, as a general principle, equitable estates cannot be effectually created with such provisos, except in the case of trusts created for the protection and benefit of married women.   In *Baker* v. *Keiser*, 75 Md. 332, the cases of *Smith* v. *Towers* and *Warner* v. *Rice*, were discussed and it was said that in the latter case this Court " emphatically declared that it was wholly against the policy of the law to allow property, whether legal or equitable, to be fettered by restraints upon alienation; and *generally* the Court said whenever property is subject to alienation by the owner, it is subject to his debts."   It was stated in that opinion that the majority of the Court concluded in *Smith* v. *Towers* that there was nothing in the decision of *Warner* v. *Rice* "which should restrain this Court from saying that the founder of the trust could by *sufficiently clear language create a trust* for a beneficiary without the power of alienation," but the opinion concluded by saying that "This Court went as far as it could in *Towers' case* to effect the intention of the testator which was so expressly declared; but proper adherence to the policy of the law in the State will not allow the extension of the doctrine of the *Towers case* beyond the limitations of that decision, nor to a case not falling clearly within its reasons and reasoning."

But this case of *Warner* v. *Rice* is clearly distinguishable

from that of *Smith* v. *Towers*, and of *Reid* v. *Safe Deposit and Trust Company*, inasmuch as in that case there was an attempt of *the owner* of the property to place it beyond the reach of *his* creditors and yet retain the enjoyment of it during his life, whilst in the other two cases the testators were creating trusts in favor of third persons. The theory upon which Courts have held restraints upon alienation, etc., valid, is that the *cestui que trust* only has what the donor has given him—is the recipient of his bounty—and therefore if the donor has not given him the right to alienate the property or made it subject to the payment of his debts no one has the right to complain. As is well said in *Broadway National Bank* v. *Adams*, 133 Mass. 170, "under our system, creditors may reach all the property of the debtor not exempted by law, but they cannot enlarge the gift of the founder of the trust and take more than he has given." This is well illustrated in the Missouri cases. In *Lampert* v. *Haydel*, 96 Mo. 439, and in *Partridge* v. *Cavender*, 96 Mo. 452, the doctrine had been distinctly announced that by the use of apt terms a testator could forbid the alienation of property *in trust* and could place it beyond the reach of the creditors of the beneficiary ; but in *Bank of Commerce* v. *Chambers*, 96 Mo. 459, a husband who had released his curtesy in his wife's estate, accepting in lieu thereof an income given him by her will, was regarded as a purchaser of such income and not a mere recipient of his wife's bounty, and therefore the income was held to be subject to the claims of his creditors, notwithstanding the provisions in the will to the contrary. In referring to *Lampert* v. *Haydel* that Court said that it, "and the class to which it belongs, rests in a large part upon the distinct ground that a creditor is not defrauded and therefore has no cause of complaint, because the owner of the property in the free exercise of his will so disposes of it that the object of his bounty, who parts with nothing in return, has a sufficient income provided for and applied to his life support." Even that class of cases should be carefully guarded and Courts should

not be inclined to exempt property from its usual incidents of the right of alienation and liability for debts unless the language of the donor be free from doubt.   But it is going too far and is too violently assaulting the policy of the law of this State, as indicated above, to permit a person to convey property owned by him to a trustee, and still retain full enjoyment of the income and revenues from it through the instrumentality of the trustee, and yet have the interest he retains for himself, worth it may be thousands or tens of thousands of dollars per annum, so fettered by his own act that it cannot be disposed of or be reached by his creditors. It is true that our Land Records are open to the public, and in contemplation of law what is properly recorded therein is presumed to be known by all, yet the fact remains that if a person has once owned property and continues to occupy it or use it just as he has always done, it would occur to but few persons if any, at least in ordinary transactions, that he must inquire, perhaps employ counsel to ascertain, whether there had been any change in the legal status of such property.   It may be argued that this may happen in the cases we have already said are lawful in this State, where the bounty is bestowed upon third persons, and to some extent that may be true, but in those cases persons dealing with them may perhaps be expected to ascertain what the party receives—what interest in the property was given to him—but in the case before us he would not only have to find out what property he owned in the beginning, but from time to time examine the records to see whether the former, and still ostensible owner of it continued to retain any interest that was liable for his debts.   It cannot be denied that property is deprived of some of its greatest value to the community in which it is held or located, when beyond the power of alienation or reach of the creditors of its present owners.   To hold that a grantor can retain all the use and enjoyment of his property for life "free from the incidents of property and not subject to his debts, would be a dangerous and startling proposition to sanction." We

do not think it can be sustained by reason or authority. So far as we are aware the authorities are the other way. *Warner* v. *Rice, supra,* 4 Kent's Com. 311; *Mackason's Appeal,* 42 Pa. 330; *Ghormley* v. *Smith,* 139 Pa. 584; *Mc-Ilvaine* v. *Smith,* 42 Mo. 45 (approved as to this point in *Lambert* v. *Haydel,* 96 Mo. 439); *Pacific Bank* v. *Windram,* 133 Mass. 175; *Jackson* v. *Von Zeidlitz,* 136 Mass. 342.

But conceding this to be the law as to those who are *sui juris,* how far does it apply to married women or to a deed made by one in contemplation of marriage? That is the important and most difficult question before us. The doctrine of the separate estate of a married woman was purely a creature of equity and worked a radical change in the principles of the common law applicable to the marital relation, as affecting the rights of property between husband and wife. In *Buckton* v. *Hay,* 11 Ch. Div. 645, the Master of the Rolls said that " it was considered that to give it to her without restraint would be practically to give it to her husband, and therefore to prevent this, a condition was allowed to be imposed, restraining her from anticipating her income, and thus fettering the free alienation," and in *Tullett* v. *Armstrong,* 4 Myl. and C. 377, LORD CHANCELLOR COTTENHAM said, " The separate estate and the prohibition of anticipation are equally creatures of equity, and equally inconsistent with the ordinary rules of property. The one is only a restriction and qualification of the other. The two must stand or fall together." And again, " It being once settled that a wife might enjoy separate estate as a *feme sole,* the laws of property attached to this new estate, and it was found, as part of such law, that the power of alienation belonged to the wife, and was destructive of the security intended for it. Equity again interfered and, by another violation of the laws of property, supported the validity of the prohibition against alienation." In other words, the reason that the English Courts permitted these restrictions on property of a married woman, although they

had denied their validity as against the property of persons *sui juris,* was that her right to hold property free from her husband's control was created for her by Courts of Equity and the Chancellors thought she was not sufficiently protected from her husband without this restraint. It was very reluctantly done and only because it was deemed necessary for the protection of wives from their husbands, as a study of the English cases will show. What we have said above in regard to these restraints imposed by third persons will, of course, apply to a married woman when she is the recipient of the bounty of another, but we cannot consent to the establishment of a doctrine in this State which will enable a married woman, or a woman in contemplation of marriage, to place her property that would be otherwise responsible for debts contracted with reference to it beyond the reach of her creditors and still enjoy the use and benefit of it as fully and completely as she had done before. We do not mean to intimate that she cannot so settle her separate property as to place it beyond the control and reach of her husband and his creditors, but when the rights of her creditors are involved and the property in question be of the character that would be liable to such creditors but for such restraints, she should not be permitted to escape the payment of her just debts by reason of her own declaration that such property should not be liable for her debts or that the income should be paid to her alone and not to another, notwithstanding it is made a matter of record before the debts are contracted. There is no necessity to establish such a doctrine for her protection against her husband, as under the laws of this State she has ample protection against him and his creditors and we do not " assume that husbands will be constantly endeavoring to wrest their wives' property from them and devote it to their own uses." *Cooke* v. *Husbands,* 11 Md. 505 ; *Olivet* v. *Whitworth,* 82 Md. 282. Separate estates were created in equity because married women could hold no other. As the husband at common law became the ab-

solute owner of the wife's personal property and of the
rents and profits of her real estate, during coverture, she
was not liable for debts, or to speak more accurately she
could not contract them.    When, therefore, Chancellors
created an estate that she could hold and dispose of and
which was liable for her debts, if contracted with reference
to it by going a step further and permitting restraints on
alienation and anticipation they did not place the property
in a worse position so far as the debts of married women
were concerned than it was before the equitable separate es-
tate was created.    But under our laws a married woman
may not only have an equitable separate estate, but by stat-
ute she may acquire property by purchase, gift, grant, de-
vise, bequest, descent, in course of distribution, or as
amended in 1892 in any other manner, and however obtained,
it is protected from the debts of her husband.    Such prop-
erty she holds for her separate use with power of devising
it as fully as if she were a *feme sole* and she may convey it
by joint deed with her husband.    It is not necessary for
her to have a trustee to secure her the sole and separate
use of her property, but if she desires it she can appoint
one by deed, her husband joining with her, or she can ap-
ply to a Court of Equity and have one appointed.    The
husband and wife may jointly charge her statutory separate
property in the same way that she could charge her equit-
able separate estate, even by a parol contract, and Courts
of Equity have the power to enforce the one as well as the
other.    *Wingert* v. *Gordon*, 66 Md. 106, and cases there
cited.    She may be sued at law on a note, bill of exchange,
single bill, bond, contract or agreement, executed jointly
with her husband.    Property earned by her skill, industry
or personal labor, as well as the income therefrom, is held
by her to her sole and separate use, with power as a *feme
sole* to dispose of it, and it is liable for debts incurred by
her about such business.    In short the tendency of our
legislation is to greatly enlarge both her powers and liabili-
ties, although it carefully protects her property from her

husband and his creditors, so that now many of the reasons for decisions rendered in the past century, or the early part of the present one, can no longer have much force under our changed conditions. This particular question was not passed upon by this Court when we still had the conditions to meet that originally influenced the English Courts, and as we are now called upon for the first time to decide it, at a time when the policy of the State is so radically different in its dealing with married women from what it formerly was, we do not feel called upon to be governed by reasons no longer applicable and make an exception in favor of married women, or those in contemplation of marriage, especially as it might result in creating a privileged class which would not reflect credit upon the law that created it nor the State that fostered it. Property is too easily transferred from husband to wife to permit *her* to do what *he* is prohibited from doing, because it is contrary to the policy of the law, calculated to tempt his honesty and to impose upon and deceive those dealing with him. If the wife is at the mercy of and under the absolute control of the husband, as seemed to be the moving cause of the English Courts when they supported the validity of the prohibition against alienation in her favor, then he can with great facility make use of her to do what he himself cannot do, if we hold she can place such restraints on her property. He would only be required to convey the property to her and let her place such restraints on it as he desired to make it impregnable against the assault of creditors, although he could not do it himself as long as the property was his own, because he was *sui juris*. Would not the result of such a decision be that a married man who wanted to have such restraints on his property could convey it to his wife and thus accomplish indirectly, through his wife, what he could not do directly?

Without meaning to say that the facts and reasoning are in all respects applicable, the Massachusetts and Pennsylvania cases are more in accord with our views of the proper

doctrine to establish as the law of this State on this ques-
tion than the English cases are. See *Pacific Bank* v.
*Windran*, 133 Mass. 175; *Jackson* v. *Van Zedlitz*, 136
Mass. 342; *Ghormley* v. *Smith*, 139 Pa. 584, in which the
Courts of those States have passed on the general subject,
as well as on the proposed exception in favor of married
women. In the case of *Reid* v. *Safe Deposit and Trust
Company*, *supra*, this Court, after referring to *Brandon* v.
*Robinson*, 18 Ves. 434; *Buckton* v. *Hay*, 11 Ch. Div. 645,
and *Tullett* v. *Armstrong*, 4 Myl. and C. 377, to show the
views of the English Courts, said: "It thus appears that
the exception in case of devises and settlements upon mar-
ried women was deemed necessary only because of the gen-
eral rule that restraints upon alienation and anticipation
were always regarded as repugnant to the estate. But in
Maryland this is not the general rule." And then after
quoting from *Smith* v. *Towers*, to show what the law is here,
it was said, "In this State, therefore, where the law is as
just stated, it is difficult to perceive why trusts in cases of
married women do not stand on the same footing as other
trusts of the same nature." Although this precise ques-
tion was not involved in that case, we strongly intimated
that we differed from the English decisions which applied a
different rule in favor of trusts to married women from that
applied to other trusts of the same nature, and we are of
opinion that the rule which we have above laid down for
persons who are *sui juris* is equally applicable to them.
The income from the property in the hands of the trustee
is therefore liable in equity to the payment of the debt due
the appellant. We have not thought it necessary to advert
to the fact that the deed was made when Mrs. Macgill was
single, as it seems to have been practically conceded that it
was made in contemplation of marriage, or that her hus-
band departed this life after the debt was contracted and
after this suit was brought.

The decree will be reversed and the cause remanded in
order that the lower Court may pass a decree requiring the

trustee to pay out of income now in his hands or that may hereafter come into his hands, the amount due on the note of Mrs. Macgill together with the costs in this Court and the Court below.

*Decree reversed and cause remanded.*

(Decided February 10th, 1898).

PAGE, J., dissents.