## In re DUDLEY'S ESTATE.

(District Court, D. Maryland. February 2, 1925.)

**Bankruptcy  ⬅═143(10)—Wills  ⬅═674—Life interest of bankrupt in estate held to pass to his trustee; will held not to create spendthrift trust.**

Under the law of Maryland, as settled by decision, a will which left the property of the testator in trust, the income to be paid in equal parts to his six children during their lifetime, or to the issue of any child who should die before termination of the trust, with remainder over after the death of the last child, "the payments to be made by the trustees into the hands of him or her, as the case may be, personally," *held* not to create a spendthrift trust, and the life interest of one of the sons *held* to pass to his trustee in bankruptcy.

In Bankruptcy. In the matter of the estate of Hiram G. Dudley, Jr., bankrupt. On question whether life interest of bankrupt in estate passed to his trustee. Decree in favor of trustee.

Isaac Lobe Straus, of Baltimore, for trustee.

Edward L. Ward, of Baltimore, for bankrupt.

SOPER, District Judge. Hiram G. Dudley, Sr., died on December 4, 1918, leaving a will, which created a trust estate for the benefit of his children, for life, with remainder over. One of the beneficiaries was Hiram G. Dudley, Jr., a son, who was adjudicated a bankrupt by this court on July 23, 1924. The bankrupt contends that the trust estate under the will is a spendthrift trust, and that therefore his interest therein did not pass to his trustee in bankruptcy. This claim is the matter for determination.

The will was dated February 16, 1915, and a codicil thereto, August 9, 1916. The testimony shows that at the time of the execution of the will, the testator had six children: Frank S. Dudley, then 37 years of age, who had been a partner with his father for 15 years in the firm of Dudley & Carpenter, and who was a reliable and capable business man; May, a married daughter, with children; Ethel, a single daughter; Charles, 26 years of age; Hiram, 21 years

of age; and James, a young boy in school. Charles was a bookkeeper, employed by his father's firm, and died two months previous to his father. Hiram, Jr., was 21 years of age and had been married a few months. He was likewise a clerk of the firm, making $25 per week. In February, 1917, he was obliged to leave his employment because of ill health. James likewise broke down in health in 1918, prior to his father's death. The value of the estate at the time of the testator's death was more than $500,000. It was worth considerably less in 1915.

The will, after providing an annuity of $5,000 for the testator's wife, leaves the entire estate to the testator's three sons, Frank, Charles, and Hiram, and to the survivors and survivor of them, and to the successors in trust, to manage and invest the estate for the benefit of the children and their issue, until the death of the last survivor of the children; also to collect the income therefrom, and in trust, after the payment of the necessary expenses, "to divide and to pay over, semiannually, during the continuance of the trust, the net rents, profits, issues and income, to my children, in equal shares and proportions, the payment to be made by the trustees into the hands of him or her, as the case may be, personally."

"In the event of the death of any of my children, leaving issue, the proportion or share of the income of the child so dying, shall be paid to the issue of such child, and if there be no issue, then to my other children, and the issue, if any, of any deceased child, until the death of the last survivor of my children; the issue of any deceased child to take the proportion to which the parent would be entitled if living.

"I do further will and direct that the trustees shall pay over to each child as he or she, if living, shall arrive at twenty-eight years of age, the amount of five thousand dollars, and shall also pay over to each child, if living, as he or she shall arrive at the age of thirty-three years, an additional sum of five thousand dollars, the income or interest on the amount paid each child under this provision to be deducted from his or her proportion or share of the income from the date of such payment."

The will further empowers the children, in case of death before arriving at the ages of 28 or 33 years, to dispose by will of said sums of $5,000. The will directs that, upon the death of the last survivor of the children, the trust shall cease and the entire trust estate shall vest in and become the

absolute property of the issue then living of the children, per stirpes. The trustees are given the power of investment and reinvestment, and to this end to sell and convey any property that shall come into their hands as trustees.

The testator, reposing entire confidence in the integrity of his sons, directs that they shall be excused from giving bond, as trustees, until the trust shall devolve upon the last survivor of them, whereupon he shall file a proper bond, as trustee, and have a court of competent jurisdiction assume jurisdiction of the trust estate. The three sons are also appointed executors of the will without bond.

The codicil of August 9, 1916, ratified and confirmed the will, except that it directed that Thomas J. Keating be added as coexecutor and cotrustee with the three sons, with like powers and duties, and further provided that, in the event the trust should at any time devolve upon Hiram G. Dudley, Jr., and the successor and survivor of the three remaining trustees, a court of competent jurisdiction should be requested to assume jurisdiction of the trust, and to appoint some suitable person to act as additional trustee, and that a proper bond be then filed by the trustees.

Whether or not the will created a spendthrift trust is a question to be determined in accordance with the Maryland decisions, since it is the policy of the Bankruptcy Act to respect state exemptions. Eaton v. Boston Trust Co., 240 U. S. 427, 36 S. Ct. 391, 60 L. Ed. 723, Ann. Cas. 1918D, 90. The validity of a testamentary disposition, purporting to create a spendthrift trust, was first decided by the Maryland Court of Appeals in the case of Smith v. Towers, 69 Md. 77, 14 A. 497, 15 A. 92, 9 Am. St. Rep. 398. The testator devised certain real estate to a trustee in trust, to pay the net rents therefrom to his son for life, "into his own hands and not into another, whether claiming by his authority or otherwise." The court held that there was no doubt that the testator meant to give the income from the property to his son, to the exclusion of creditors. It said: "He [the testator] not only gives the legal estate to the trustee, but he directs in express terms that he shall pay the income into the hands of his son, and not into the hands of any other person, whether claiming by his authority, or in any other capacity. Here, then, is an express provision that the income shall be paid to his son, and an express prohibition

against paying it to any other person. If the income in the hands of the trustee is liable to the claims of creditors, the trustee, it is plain, could not carry out the trust." Having reached this conclusion as to the meaning of the will, the court decided that such a provision is valid, and that it is not against public policy to permit a testator, who gives without any pecuniary return from the donee, to attach to the gift a provision that the donee shall have the uninterrupted benefit of the gift, without interference on the part of the creditors. Decisions in England and in other states of the Union to the contrary were noted, but the reasoning of the United States Supreme Court in Nichols v. Eaton, 91 U. S. 722, 23 L. Ed. 254, was adopted. The principles of the last-mentioned case have been reaffirmed in Shelton v. King, 229 U. S. 90, 33 S. Ct. 686, 57 L. Ed. 1086.

In the prior case of Warner v. Rice, 66 Md. 436, 8 A. 84, the Court of Appeals decided that a person may not make a conveyance of his property in trust for the benefit of himself and his family, free from liability for any of his debts, because it is wholly against the policy of the law to allow property, whether legal or equitable, to be fettered by restraints upon alienation, and generally, whenever property is subject to alienation by the owner, it is subject to his debts.

These two decisions of the Maryland court enunciate the principles which govern the decision of the case at bar. The whole matter is perhaps best summed up in the following quotation from the case of Brown v. Macgill, 87 Md. 161, 39 A. 613, 39 L. R. A. 806, 67 Am. St. Rep. 334, wherein it was held that a deed of trust made by a woman in contemplation of marriage, providing that she should enjoy the income of her property and that the same should not be liable to creditors, was ineffectual to place the income beyond the reach of creditors. The court said:

"In Baker v. Keiser, 75 Md. 332, the cases of Smith v. Towers and Warner v. Rice were discussed, and it was said that in the latter case this court 'emphatically' declared that it was wholly against the policy of the law to allow property, whether legal or equitable, to be fettered by restraints upon alienation; and generally the court said, 'whenever property is subject to alienation by the owner, it is subject to his debts.' It was stated in that opinion that the majority of the court concluded in Smith v. Towers that there was nothing in the decision of Warner v. Rice 'which should restrain this court from saying that the founder of the trust *could by sufficiently clear language, create a trust* for a beneficiary without the power of alienation,' but the opinion concluded by saying that 'this court went as far as it could in Towers Case to effect the intention of the testator, which was so expressly declared; but proper adherence to the policy of the law in the state will not allow the extension of the doctrine of the Towers Case beyond the limitations of that decision, nor to a case not falling clearly within its reasons and reasoning.'"

The court referred to the class of cases which hold that by the use of apt terms a testator may forbid the alienation of property in trust and place it beyond the reach of the creditors of the beneficiary, and in this connection the court said:

"Even that class of cases should be carefully guarded, and courts should not be inclined to exempt property from its usual incidents of the right of alienation and liability for debts, unless the language of the donor be free from doubt."

In the following cases in Maryland, it was held that a valid spendthrift trust was created: Maryland Grange Agency v. Lee, 72 Md. 161, 19 A. 534; Reid v. Safe Deposit & Trust Co., 86 Md. 464, 38 A. 899; Jackson Square Loan & Svgs. Ass'n v. Bartlett, 95 Md. 661, 63 A. 426, 93 Am. St. Rep. 416; Safe Deposit Trust Co. v. Independent Brewing Ass'n, 127 Md. 463, 96 A. 617; Plitt v. Yakel, 129 Md. 464, 99 A. 669. In each of them, the instrument creating the trust contained an express provision that the principal or income of the property should not be made liable for the debts of the beneficiary, or be taken in execution or attachment, or that the beneficiary should not pledge or anticipate the property or income therefrom. Indeed, in all of these cases, the intention of the testator to create a spendthrift trust is more explicitly declared than in the will discussed in Smith v. Towers, upon which case the bankrupt chiefly relies.

In contrast with these decisions are the cases in which the Court of Appeals has held that the intention of the creator of the trust to free the property from the claims of creditors of the beneficiary is not expressed with sufficient clearness to create a spendthrift trust. The cases of Baker v. Keiser, 75 Md. 332, 23 A. 735, and Brown

v. MacGill, 87 Md. 161, 39 A. 613, 39 L. R. A. 806, 67 Am. St. Rep. 334, have already been mentioned. To like effect are the cases of Wenzel v. Powder, 100 Md. 36, 59 A. 194, 108 Am. St. Rep. 380; Houghton v. Tiffany, 116 Md. 655, 82 A. 831. In both instances the trustee was directed to apply the income from the property to the support of the beneficiary, and in the last-mentioned case the trustee was given the discretion either to pay the income to the beneficiary or to apply the same for his use. It was held in each case that the language indicated was simply a declaration of a general trust for the benefit of the donee, and that, since there was nothing in the instrument creating the trust which prohibited the alienation or anticipation of the income, a spendthrift trust was not created.

Do the following words in the will in the case at bar constitute sufficiently clear language, free from doubt, to indicate the intention of the testator to create a spendthrift trust, to wit: The direction to the trustees "to divide and pay over semiannually during the continuance of the trust, the net rents, profits, issues and income to my children in equal shares and proportions, the payments to be made by the trustees into the hands of him or her as the case may be personally." It is urged by the bankrupt that the concluding words of this phrase, to wit, "into the hands of him or her as the case may be personally," are equivalent to the phrase considered and approved in Smith v. Towers, to wit, "into his own hands and not into another, whether claiming by his authority or otherwise."

It is contended that the direction to pay the income into the hands of each beneficiary personally includes by necessary inference a prohibition against payment to any one else, even with the authority of the beneficiary; but the claim is too broad. The direction to make the payment to the beneficiary is clear and explicit, but there is no prohibition of alienation by the beneficiary, nor may it be fairly inferred. In every case of a general trust, in which a trustee is instructed to pay income to a beneficiary, it is the duty of the trustee to make payment into the hands of the beneficiary personally. The direction in the Dudley will as to the payment of income may be more explicit than that usually employed in similar instruments, but it has the same meaning. In no case would a trustee be justified in diverting the payment, unless authorized by the beneficiary

himself. Since it is contrary to the policy of the law to allow property to be fettered by restraints upon alienation, unless the language of the donor and founder of the trust be free from doubt, it must be held, so far as the language under discussion is concerned, that the estate of the bankrupt was clothed with the usual incidents of such property, and passed to his trustee in bankruptcy.

Nor can it be said that the testimony in regard to the members of the testator's family throws additional light upon his intention, or shows that he meant to prevent his children from alienating their respective interests in the estate, or to protect them from the claims of their creditors. Charles and Hiram, Jr., are said to have spent money freely—apparently in no great amounts, since both were employed at modest salaries with their father's firm. Both, however, are described as sober and industrious young men. Hiram and James each became seriously ill after the execution of the will and before the death of the testator. The most that can be said as to this testimony is that it would have been natural for the father to have made special provision to protect immature young men and his daughters from claims of creditors, and to have insured them an income for life; but, whatever force such considerations may have, it is entirely lost when it is noted that no distinction was made between the children, and that the same provision was made in the will for the testator's oldest son, who was admittedly a mature man of good business capacity. Certainly no inference may be drawn from the testimony sufficiently strong to make out an intention of the testator, which cannot be gathered from the words of the will itself.

Other provisions of the will hinder, rather than help, the contention of the bankrupt. In the clause of the will immediately following the words under discussion, it is provided that the income of a child dying leaving issue shall be paid to the issue, and, if no issue, to the other children; but no words of any kind are used from which a spendthrift trust may be inferred. In the same way there is no attempt to limit the control of the children to charge or incumber the specific legacies of $5,000 to be paid to each of them upon arriving at the age of 28, and again at the age of 33, years. The intention of the testator to give his beneficiaries unrestrained rights of ownership over the property thus bequeathed is perfectly clear, and tends rather to support

the conclusion that the testator did not have in mind the creation of a spendthrift trust as to any part of the property of any beneficiary named in the will.

A decree declaring the life interest of the bankrupt a part of the estate in bankruptcy will be signed.