ESTATE OF SUSIE C. HAGGETT, DECEASED, SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16302. Promulgated March 1, 1950.

*George M. White, Esq.*, and *Charles G. Page, Esq.*, for the petitioner.
*George J. LeBlanc, Esq.*, for the respondent.

### OPINION.

LEECH, *Judge*: This opinion supersedes an unpublished opinion promulgated by this Court on December 30, 1949, which was withdrawn and vacated by order of this Court on February 1, 1950, pursuant to a petition filed by counsel for the petitioner on January 27, 1950.

This proceeding involves a deficiency in estate tax in the amount of $11,079.26. The issues presented are:

(1) Whether the respondent erred in including in the gross estate the commuted value of an annuity contract issued by the Mutual Life Insurance Co. of New York on March 22, 1938.

(2) Whether the respondent erred in his determination of the amount of the deduction allowable for property previously taxed.

(3) Whether the respondent erred in his determination of the amount of the estate "subject to general claims" in computing the net amount of the deduction allowable for property previously taxed.

All of the facts have been stipulated and are so found.

Susie C. Haggett died a resident of Baltimore, Maryland, on June 30, 1943. The Safe Deposit & Trust Co. of Baltimore, Maryland, duly qualified as executor. An estate tax return was filed with the collector of internal revenue for the district of Maryland, at Baltimore, Maryland. The tax of $12,190.88, shown on that return, was paid. As disclosed on the return, the only claims against the estate, aside from administration expenses and liability for estate taxes, were certain general claims in the total amount of $3,460.65.

The respondent, by letter dated September 22, 1947, advised petitioner of the determination of a deficiency in estate tax against that estate in the amount of $11,079.26. The amount of the deficiency was paid, to stop the accumulation of interest, on September 7, 1948.

Susie C. Haggett was the widow of Eben R. Haggett, who died a resident of Baltimore, Maryland, on May 19, 1940. The Safe Deposit & Trust Co. of Baltimore was also the executor of the estate of Eben R. Haggett, deceased, administered his estate, and paid the estate tax due thereon, prior to the death of Susie C. Haggett.

On March 21, 1938, Eben R. Haggett gave his wife, in cash, the sum of $50,000, in order that she might invest it in an annuity contract on his life. He filed a gift tax return and paid a gift tax in the amount of $1,374.23. On this return the donor stated the gift was made "to Susie C. Haggett, wife, so that regardless of my losses, she will have a guaranteed income for herself."

Upon receipt of this $50,000, Susie C. Haggett purchased from the Mutual Life Insurance Co. of New York a nonparticipating refund annuity contract, being Policy No. 46824, issued March 22, 1938. The application for this annuity contract was executed by Susie C. Haggett as "purchaser" and by Eben R. Haggett as "annuitant." It was represented in this application that "this annuity is being applied for by Mrs. Susie C. Haggett and the deposit will be paid for out of her funds." The contract issued by the Mutual Life Insurance Co. provides in substance that it will "pay to the persons named and in the manner specified in the 'Designation of Payees' clause endorsed on page two hereof" an annuity of $1,019 each three months "during the lifetime of Eben R. Haggett, the Annuitant" and "if the Annuitant shall die before the sum of the annuity payments made by the Com-

pany shall equal the stipulated payment paid to the Company for this Contract will continue to pay to the persons named and in the manner specified in the 'Designation of Payees' clause endorsed on page two hereof, * * * the periodic annuity payments until the sum of all the annuity payments made by the Company including a final smaller payment shall be equal to the stipulated payment paid. This Contract is issued in consideration of the payment to the Company of the stipulated payment of FIFTY THOUSAND Dollars." Under "Designation of Payees" it is provided:

PART A. It is agreed that each of the annuity payments provided for hereunder, which shall become payable during the lifetime of the Annuitant shall be payable as it becomes due to Susie C. Haggett, wife of the Annuitant, or if said wife shall not be living on its due date to the Annuitant.

PART B. It is further agreed that each of the annuity payments provided for on page one which shall become payable after the death of the Annuitant shall be payable to the beneficiaries as follows:

The beneficiaries are: said wife, the Annuitant's grandchildren, Dorothy J. Haggett, Anne C. Haggett, Marjorie H. Haggett, Mary A. Haggett, Miriam H. Haggett and Arthur R. Haggett, Jr., and the executors, administrators or assigns of the Annuitant, all as provided below.

I. If said wife shall survive the Annuitant, each of said annuity payments shall be payable as it becomes due to said wife, if said wife shall be living on its due date.

If said wife shall die after the death of the Annuitant and before all of said annuity payments shall have become payable, the remainder of said annuity payments shall, at the death of said wife be discounted at four percent interest compounded annually, and such discounted value shall be payable in a single sum to such of said grandchildren as shall be then living, share and share alike, or if none of said grandchildren shall be then living, to the executors or administrators of said wife.

II. If said wife shall not survive the Annuitant, said annuity payments shall at the death of the Annuitant be discounted at four percent interest, compounded annually and such discounted value shall be payable in a single sum to such of said grandchildren as shall be then living, share and share alike, or if none of said grandchildren shall be then living to the executors, administrators or assigns of the Annuitant.

    *       *       *       *       *       *       *

Section 3 provided for a "Cash Surrender Value," and section 5 for a "Change of Beneficiary." The contract further provided:

Anything in this contract to the contrary notwithstanding, Susie C. Haggett, wife of the Annuitant, one of the Beneficiaries, may without the consent and to the exclusion of the Annuitant or any other Beneficiary, receive, exercise and enjoy every benefit, option, right and privilege conferred by this contract or allowed by this Company.

None of the powers were ever exercised by Susie C. Haggett.

The estate tax return filed by the executor for the estate of Eben R. Haggett did not include the annuity contract in his gross estate. The internal revenue agent thereafter proposed a deficiency, in which the agent proposed to include the value of the annuity contract in the amount of $50,000 in his gross estate. The executor filed a pro-

test, contending that the value of the annuity contract should not be included, and, if so, only the commuted value of $34,497.05 at the date of Eben R. Haggett's death should be included.

By letter dated December 10, 1942, the executor of the estate of Eben R. Haggett proposed a settlement of the controversy regarding the proposals of the revenue agent; and, as a part of such proposal, suggested the inclusion in the gross estate of one-half of the commuted value of the contract, or $17,248.53. This offer was accepted, and thereafter a deficiency assessment of $8,670.13 was made against the estate of Eben R. Haggett, which included the annuity contract in the manner proposed. The additional tax thereupon assessed was paid. The computation of the deficiency shows that the item "Transfers" shown on the return in the amount of $19,364.01 was increased to $36,612.54, reflecting the inclusion in Eben R. Haggett's gross estate of the amount of $17,248.53, or one-half of the commuted value of the annuity contract.

The commuted value of the annuity contract at the date of the death of Susie C. Haggett was $24,901.72.

On April 9, 1933, in Baltimore, Maryland, Susie C. Haggett executed a deed of trust of certain of her property to the Safe Deposit & Trust Co. of Baltimore, providing for the payment of the income therefrom to her for life and reserving full and complete powers of withdrawal of principal and of modification and revocation at any time during her lifetime. The corpus of this trust was included in the gross estate and shown on the estate tax return under "Schedule G, Transfers During Decedent's Life," at a value of $83,709.77. That value was increased to $84,539.77 by adjustments set forth in the notice of deficiency. Petitioner does not contest such adjustments.

Petitioner attacks the action of the respondent in including in the gross estate of decedent any part of the agreed commuted value of $24,901.72 at the date of her death of the refund nonparticipating annuity contract issued by the Mutual Life Insurance Co. of New York. In determining the deficiency contested here, the respondent included $12,450.86, or one-half of the commuted value as of the death of Susie C. Haggett, as a transfer during her life, and the other one-half as "Property Previously Taxed." Petitioner contends that the consideration paid for the contract was furnished by Eben R. Haggett, decedent's husband, and the *inter vivos* transfer was made by him. It is further argued that decedent possessed only the right to receive the stipulated payments as provided in the contract, together with certain rights and privileges which she never exercised. The respondent contends that the annuity contract was purchased by the decedent with the $50,000 which her husband had previously given to her. It was stipulated that on the gift tax return filed by decedent's husband, reporting the gift as that of $50,000, the donor stated the gift was

made "to Susie C. Haggett, wife, so that regardless of my losses, she will have a guaranteed income for herself." It was further stipulated that the $50,000 was given to the decedent in order that she might invest the same in an annuity contract on his life. The fund was used the same day for that purpose. Therefore, we conclude that in reality Eben R. Haggett was the purchaser of the annuity. *Estate of Grace D. Sinclaire*, 13 T. C. 742; cf. *Catherine G. Armston*, 12 T. C. 539; *Helen C. Brown*, 12 T. C. 1095. The present decedent's interest in the annuity contract was that of a life beneficiary with the power to surrender the contract and receive its then cash value, and also the power to change the beneficiaries. Neither of these powers was exercised by her during her lifetime. But a mere power with respect to property is not such an interest therein as subjects it to the provisions of section 811 (a) of the Internal Revenue Code.[1] *Estate of Gertrude Leon Royce*, 46 B. T. A. 1090. No taxable interest in the annuity contract ever belonged to her and, therefore, she did not make any transfer in respect of such contract requiring the inclusion of any amount as the value thereof in her gross estate pursuant to the provisions of section 811 (c) or (d) of the Code.[2] The powers

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death.

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

*        *        *        *        *        *        *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

(A) in contemplation of his death. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter; or

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

(C) intended to take effect in possession or enjoyment at or after his death.

*        *        *        *        *        *        *

(d) REVOCABLE TRANSFERS.—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death;

*        *        *        *        *        *        *

given to this decedent under the annuity contract were created on March 22, 1938, prior to the amendments made to section 811 (f) by the Revenue Act of 1942.[3] That section specifically provides that the amendments are not applicable where the power is created prior to the time the act became effective and the decedent dies before July 1, 1950.[4] Section 811 (f) is, therefore, not applicable.

We, therefore, hold that the respondent erred in including in the decedent's gross estate any part of the principal of the annuity contract. It necessarily follows, moreover, that no amount with respect to such annuity contract is includible in decedent's estate as property previously taxed.

In determining the present deficiency, in the computation of the deduction for "Property Previously Taxed," under section 812 (c) of the Internal Revenue Code, the respondent excluded from that category the value, $84,539.77, at the death of the decedent, of the corpus of the revocable trust created by decedent April 9, 1943, on the ground that the corpus of such trust was not "subject to general claims" against the decedent. Petitioner attacks that action on the ground that, under Maryland law, controlling here, the corpus of this trust was "subject to general claims" against the decedent.

The trust deed provides for the payment of the net income to the decedent, the settlor, for her life, with the right to withdraw such sums out of the principal as decedent might from time to time demand.

---

[3] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States.

\*     \*     \*     \*     \*     \*     \*

(f) POWERS OF APPOINTMENT.—

(1) IN GENERAL.—To the extent of any property (A) with respect to which the decedent has at the time of his death a power of appointment, or (B) with respect to which he has at any time exercised or released a power of appointment in contemplation of death, or (C) with respect to which he has at any time exercised or released a power of appointment by a disposition intended to take effect in possession or enjoyment at or after his death, or by a disposition under which he has retained for his life or any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

\*     \*     \*     \*     \*     \*     \*

[4] SEC. 403. POWERS OF APPOINTMENT.

\*     \*     \*     \*     \*     \*     \*

(d) POWERS WITH RESPECT TO WHICH AMENDMENTS NOT APPLICABLE.—

\*     \*     \*     \*     \*     \*     \*

(3) The amendments made by this section shall not apply with respect to any power to appoint created on or before the date of the enactment of this Act if it is released before July 1, 1950, or within the time limited by paragraph (2) in cases to which such paragraph is applicable; or if the decedent dies before July 1, 1950, or within the time limited by paragraph (2) in cases to which such paragraph is applicable, and such power is not exercised.

\*     \*     \*     \*     \*     \*     \*

Upon the death of decedent the corpus was to be divided among her children then living and the issue then living of any deceased children, *per stirpes*. Decedent further reserved the unconditional right at all times to revoke, change, or amend the trust deed and to withdraw any part of the trust estate from the operation of the trust.

If we understand petitioner's claim, it is that the trust deed is void as to all creditors as a matter of law, and that it is unnecessary that there be a finding of fact that the effect of the deed was to hinder and delay creditors. Petitioner relies upon *Scott* v. *Keane*, 87 Md. 709; 40 Atl. 1070. In that case the owner of property made a voluntary settlement, reserving a life estate and providing that he might revoke the settlement for his own benefit. The court there said:

* * * The effect of the deed is that he reserved the same rights that a fee-simple owner would have in the property, but attempts to place the remainder, after his life estate, beyond the reach of his creditors, unless he chooses to exercise the powers therein reserved to himself. * * *

* * * * * * *

* * * To sanction such methods would be establishing a most dangerous means of enabling a debtor to force his creditors to accept his own terms. As against existing creditors, no effort of a debtor to hinder or delay his creditors is more severely condemned by law than an attempt to place his property where he can enjoy it, but require his creditors to await his pleasure for the payment of their claims out of it (*Price* v. *Pitzer*, 44 Md. 521) ; and, although the distinction between the rights of existing and subsequent creditors is marked and well defined, it should be equally against the policy of the law to permit a debtor to hold such powers over property as are attempted by this deed, and yet not make it liable to his creditors, unless he sees proper to do some act that will enable them to reach it, which he may and probably will never do. * * *

In *Brown* v. *McGill*, 87 Md. 161; 39 Atl. 613, it is said:

* * * To hold that a grantor can retain all the use and enjoyment of his property for life, "free from the incidents of property and not subject to his debts, would be a dangerous and startling proposition to sanction." * * *

The respondent has not referred us to any Maryland authorities where the principle enunciated in the cited cases has been changed, and our independent research has revealed none.

In the instant trust deed the reservations by the decedent of the right to the income and principal, with power to revoke the deed at any time, left her the sole beneficial owner of it, with absolute power of disposition as long as she lived. As against her, the only practical effect of the instrument during her lifetime was to give the right to the trustee to collect and hold the property until she should ask for it.

We think that under the Maryland law, as applied in the authorities cited, the corpus of the trust deed created by decedent April 9, 1943, was property subject to general claims within the purview of section 812 (c) of the Internal Revenue Code.

We conclude that the respondent erred in excluding the value of the corpus of this trust as property not subject to general claims in computing the net amount of the deduction for property previously taxed.

Effect will be given to the other adjustments, with respect to which the parties have stipulated, in the computation under Rule 50.

*Decision will be entered under Rule 50.*