## EARL D. WATTERSON ET AL. *v.* LLOYD I. EDGERLY

[No. 1373, September Term, 1977.]

*Decided July 18, 1978.*

The cause was argued before GILBERT, C. J., and DAVIDSON and MacDANIEL, JJ.

*E. Richard McIntyre* for appellants.

*Marvin E. Perlis* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

A spendthrift trust is an American legal creation,[1] designed specifically to afford a beneficiary those things he cannot afford, while simultaneously protecting him from the claws of cozened creditors. It runs the gamut from the benefactor's fortune to the beneficiary's good fortune and the creditor's misfortune.

Spendthrift trusts were first allowed in Maryland in *Smith v. Towers,* 69 Md. 77, 14 A. 497, 15 A. 92 (1888). There, the Court held "that the founder of a trust may provide in direct terms that his property shall go to his beneficiary to the exclusion of his [the beneficiary's] alienees, and to the exclusion of his [the beneficiary's] creditors." 69 Md. at 90-91, 14 A. at 500. The Court, in *Smith,* followed the lead of the Supreme Court of the United States in *Nichols v. Eaton,* 91 U. S. 716, 23 L. Ed. 254 (1875)[2] and the high court of Massachusetts in *Broadway Nat'l Bank v. Adams,* 133 Mass. 170 (1882). Maryland has adhered to its original position through the years in a host of cases including, *Reid v. Safe Deposit and Trust Co.,* 86 Md. 464, 38 A. 899 (1897); *Brown*

---

1. According to G. Bogert's *Handbook of the Law of Trusts* § 40 (5th ed. 1973), the courts of England "have consistently opposed such trusts" on the ground that they involve "alienability as an inherent characteristic" and "that a clause against transferring equitable interests is repugnant. . . ." *Id. See also* Brandon v. Robinson, 18 Ves. Jr. 429; Graves v. Dolphin, 1 Sim. 66; Green v. Spicer, 1 Russ & Myl. 395; Younghusband v. Gisborne, 1 Collyer 400.

The first case in which the matter of a spendthrift trust was litigated was Ashhurst's Appeal, 77 Pa. 464 (1875). The court upheld a trust but never used the term "spendthrift trust" although that expression is present in the headnote. "[A] trust for a spendthrift" first appeared in Overman's Appeal, 88 Pa. 276 (1878), where the court stated that such a trust "will be upheld in equity, is a settled doctrine of this state, and rests on the donor's right of dominion over his own property for a reasonable time." 88 Pa. at 281. Later, in Thackara v. Mintzer, 100 Pa. 151 (1882), the court again upheld the spendthrift trust without ever referring to it as such.

2. The dictum in Nichols v. Eaton, *supra,* is credited by E. Griswold in *Spendthrift Trusts* § 26 (2d ed. 1947) as "the greatest single factor in the establishment of spendthrift trusts in the United States." That dictum was grounded on early Pennsylvania cases, which, at the time of the decisions, lacked equity powers. *Id.* Griswold suggests that had the courts that cited the early Pennsylvania opinions been cognizant of the fact that the Pennsylvania courts did not then possess equity power, the dictum in *Nichols* may never have been penned and spendthrift trusts might never have reached the acceptance now accorded them. *Id.*

*v. Macgill,* 87 Md. 161, 39 A. 613 (1898); *Jackson Square Loan and Sav. Ass'n v. Bartlett,* 95 Md. 661, 53 A. 426 (1902); *Safe Deposit and Trust Co. v. Independent Brewing Ass'n,* 127 Md. 463, 96 A. 617 (1916); *Plitt v. Yakel,* 129 Md. 464, 99 A. 669 (1916); *Johnson v. Stringer,* 158 Md. 315, 148 A. 447 (1930); *Michaelson v. Sokolove,* 169 Md. 529, 182 A. 458 (1936); *Bauernschmidt v. Safe Deposit & Trust Co.,* 176 Md. 351, 4 A. 2d 712 (1939); and *Medwedeff v. Fisher,* 179 Md. 192, 17 A. 2d 141 (1941).

Nevertheless, it is unmistakable that a person may not create such a trust for his own benefit. *Manders v. Mercantile Trust and Deposit Co., 147 Md. 448, 128 A. 145 (1925); Wenzel v. Powder,* 100 Md. 36, 59 A. 194 (1904); *Brillhart v. Mish,* 99 Md. 447, 58 A. 28 (1904); *Brown v. Macgill, supra; Warner v. Rice,* 66 Md. 436, 8 A. 84 (1887); G. Bogert, *Handbook of the Law of Trusts* § 40 (5th ed. 1973); G. Bogert, *The Law of Trusts and Trustees* § 223 (2d ed. 1965); H. Ginsberg, *Equity Jurisprudence and Procedure in Maryland* 25 (1928); E. Griswold, *Spendthrift Trusts* 474 (2d ed. 1947); 1 *Restatement (Second) of Trusts* § 156(1) (1959); 2 A. Scott, *The Law of Trusts* § 156.3 (3rd ed. 1967).

The application of the principles we have stated above proves more difficult than merely articulating them. We are here called upon to decide whether a husband may convey his interest in real property, owned by the husband and his wife as tenants by the entireties, to his wife, and she in turn, by testamentary disposition, create a valid spendthrift trust so as to shield the husband from his judgment creditors.[3] Aggravating the issue is the fact that the wife died on the sixty-first (61st) day following the conveyance to her by the husband, and the sixtieth (60th) day subsequent to the execution of her will. So far as Maryland appellate courts are concerned, by answering the issue, we seem to be plowing virgin fields.

This appeal had its origin with the filing of an Amended Bill of Complaint in the Circuit Court for Montgomery County by

---

3. The record discloses that there are at least six (6) other judgment creditors with total judgments of approximately $72,500, exclusive of interest and costs.

Lloyd I. Edgerly, appellee, against Earl D. Watterson, J. Morris Hardy, trustee of the trust created by the Last Will and Testament of Emma B. Watterson, deceased, and E. Richard McIntyre, personal representative of Mrs. Watterson's estate, appellants. The bill sought to have the court "declare the spend thrift [*sic*] provision of the trust invalid to the extent of . . . [Mr. Watterson's] contribution"; permit appellee "to execute against . . . Earl D. Watterson's life interest in the real estate conveyed into the trust"; declare him "to the extent of his surrendered right of curtesy,[4] to be the settlor of the trust created by his wife," thus sanctioning appellee's executing against that interest in the estate.

The case *sub judice* was submitted to the circuit court on an agreed "Stipulation of Facts" which we quote *in toto:*

"1. That EARL D. WATTERSON and EMMA B. WATTERSON, his Wife, on May 28, 1965, acquired the real property known as 10703 Bucknell Drive, Silver Spring, Maryland, as Tenants by the Entirety, otherwise described as Lot numbered two (2), Block numbered Thirteen (13), in the subdivision known as "GLENVIEW", as per plat recorded in Plat Book 36, at Plat 2437.

2. That on January 23, 1976, EARL D. WATTERSON executed a Deed, without consideration, conveying all of his interest in the said real property to his Wife, EMMA B. WATTERSON and claimed exemption from Montgomery County transfer tax on the grounds the transfer was without consideration.

3. That on January 24, 1976, EMMA B. WATTERSON executed her Last Will and

---

4. The estate of curtesy was abolished by 1969 Md. Laws ch. 3, § 1, which became effective January 1, 1970. The act was codified as Md. Ann. Code art. 93, § 3-202. The Legislature, by 1974 Md. Laws ch. 11, repealed Article 93, as well as other statutes relating to estates and trusts and reenacted them with suitable modifications as Maryland Annotated Code, Estates and Trusts Article. The title, section number, and wording were carried forward into the new statute in precisely the same form. *See* Md. Est. & Trusts Code Ann. § 3-202.

Testament, establishing a trust for the life of EARL D. WATTERSON.

4. That the income from said trust is to be paid in quarterly installments to EARL D. WATTERSON for his support and general welfare.

5. That the said trust, as established by the Will of EMMA B. WATTERSON, has engrafted upon it what is commonly known as a spendthrift trust provision.

6. That included among the assets of the spendthrift trust is the aforementioned real estate.

7. That EMMA WATTERSON died on March 2, 1976.

8. That EARL D. WATTERSON did not renounce his statutory share but rather elected in favor of the testimentary [*sic*] spendthrift trust as provided in his Wife's Will.

9. That subsequent to the time EARL D. WATTERSON and EMMA B. WATTERSON obtained the said property and prior to the time that EARL D. WATTERSON conveyed it to EMMA B. WATTERSON, a number of judgments against EARL D. WATTERSON by various creditors, including the judgment of the Plaintiff on May 28, 1974 in the sum of $19,969.16 had been obtained in the Circuit Court for Montgomery County, Maryland against EARL D. WATTERSON. (See attached list.)

10. That the said judgment remains partially unsatisfied."

The chancellor, in a written opinion, concluded that it was "immediately apparent that the conveyance to ... [Earl Watterson's] wife without consideration, and her will immediately thereafter *when she was terminally ill,* and when ... [Earl Watterson] was and had been for many years insolvent, constituted acts done with intent to hinder, delay, or defraud creditors." (Emphasis supplied.) We have read and re-read the stipulation but are unable to find any expression therein which would give rise to the statement that Mrs.

Watterson was "terminally ill." Perhaps, it is mere surmise on the part of the trial judge based upon the date of death in relation to the conveyance and the making of the will, or perhaps he relied upon an allegation in the amended bill that the conveyance to Mrs. Watterson, by her husband, Earl, of his interest was made "in contemplation of the death of the then critically ill . . . [Mrs.] Watterson, and to avoid creditors reaching the said realty upon its becoming the sole property of Earl D. Watterson at the death of his wife. . . ." In any event, that averment was denied by the appellants, and as we have observed, there is nothing in the stipulation to support it. The finding, which was so "immediately apparent" to the chancellor is not apparent at all to us, and we are unwilling to declare that because Mrs. Watterson died sixty-one (61) days after a conveyance to her of real property which she almost simultaneously placed in a spendthrift trust for the benefit of her husband who had conveyed the property to her, that she was "terminally ill" at the time. We think that a judgment of that type is vested in an authority who occupies a position of review considerably higher than this, or any other Court.

Thus, a major premise of the trial court's reasoning, when examined, is found wanting, but even if it had been correct, its value is doubtful when we consider the holding of the Court in *Hertz v. Mills,* 166 Md. 492, 171 A. 709 (1934). A property owned as tenants by the entireties may be conveyed by either the husband or the wife to the sole ownership of the other even though the purpose behind the conveyance is to prevent the enforcement of a judgment against the grantor should he survive the grantee. *Id. See also Van Royen v. Lacey,* 266 Md. 649, 296 A. 2d 426 (1972).

The chancellor recognized the rule of *Hertz* and *Van Royen* but reasoned that the conveyance without consideration to the wife by the insolvent husband did not pass valid title to her, citing *Myers v. King,* 42 Md. 65 (1875) and *Ressmeyer v. Norwood,* 117 Md. 320, 83 A. 347 (1912). The chancellor was of the further view that Earl Watterson's transfer of his interest in the property to his wife, under the circumstances of this case constituted Earl Watterson as the settlor of the

trust. The trial judge concluded that inasmuch as the trust was created by Mr. Watterson "for his own benefit" the "spendthrift clause . . . is void insofar as existing creditors are concerned, and they can reach his interest under the trust."

We think *Myers v. King, supra* and *Ressmeyer v. Norwood, supra,* relied upon by the chancellor, to be inapposite. *Myers* was concerned with a gift of $500 by an insolvent husband to his wife. Prior to the giving of the money, the wife had absolutely no claim of ownership therein. No question of property held as tenants by the entireties was involved. *Ressmeyer* also bears no similarity to the case *sub judice.* There, a husband and wife made a mortgage to the wife alone to secure a debt in excess of $13,000, when, in fact, no such debt existed. The Court properly held that the mortgage was invalid for want of *bona fide* consideration.

We have not been directed to any Maryland case, nor have we found one, which holds that there must be a *bona fide* consideration for the transfer of a husband's interest in tenants by the entireties property to his wife. In fact, *Hertz v. Mills, supra* and *Van Royen v. Lacey, supra,* are clearly to the contrary.

Judge Smith stated for the Court, in *Van Royen,* that ". . . under our holdings a creditor of one spouse may not attack as a fraudulent conveyance the transfer of land owned by a husband and wife as tenants by the entireties." 266 Md. at 651, 296 A. 2d at 427. Under the rationale of *Hertz* and *Van Royen,* the fact that there was no consideration for the transfer, in the instant case, or that it was accomplished for the purpose of preventing the enforcement at a later time of a judgment against the husband is immaterial and does not affect the validity of the conveyance.

It has long been settled in this State that the property of a husband or wife held as tenants by the entireties cannot be taken by the creditors to satisfy the individual debts of either the husband or wife. *Hertz v. Mills, supra; Annapolis Banking & Trust Co. v. Neilson,* 164 Md. 8, 164 A. 157 (1933); *Wolf v. Johnson,* 157 Md. 112, 145 A. 363 (1929); *McCubbin v. Stanford,* 85 Md. 378, 37 A. 214 (1897); *Marburg v. Cole,* 49 Md. 402 (1878). That was also the rule at common law. 2 W.

Blackstone, *Commentaries on the Laws of England* \*182 (Lewis's ed. 1898), observes that when "both are seised of the entirety, *per tout, et non per my* [by all and not by the half] . . . neither the husband nor the wife can dispose of any part without the assent of the other. . . ." Because a judgment against either the husband or the wife does not attach to the judgment debtor's interest in the entirety, *Hertz v. Mills,* 166 Md. at 496, 171 A. at 711, the husband and wife may convey the property to a third party free and clear of the judgment. *Hertz v. Mills, supra; Jordan v. Reynolds,* 105 Md. 288, 66 A. 37 (1907).

Md. Ann. Code art. 45, § 1, provides:

> "The property, real and personal, belonging to a woman at the time of her marriage, and all the property which she may acquire or receive after her marriage, by purchase, gift, grant, devise, bequest, descent, in the course of distribution, by her own skill, labor or personal exertions, or in any other manner, shall be protected from the debts of the husband, and not in any way be liable for the payment thereof; provided, that no acquisition of property passing from one spouse to the other, shall be valid if the same has been made or granted in prejudice of the rights of subsisting creditors, who, however, must assert their claims within three years after the acquisition of the property, or be absolutely barred, and, for the purpose of asserting their rights under this section, claims of creditors not yet due and matured shall be considered as due and matured."

The statute permits a married woman to own property, through gift, purchase, grant, devise, or otherwise. We have previously observed that the case law of this State allows a husband and wife to convey good and merchantable title to a third party despite a judgment against either the husband or the wife, but not both. We have also noted that a husband or wife may convey his or her interest in tenants by the entirety property to the other spouse, without consideration

and for the purpose of preventing the enforcement of a judgment against the grantor. Accepting, then, as we must, that Earl Watterson did everything attributable to him in the "Stipulation of Facts" does not sap the vitality from Mrs. Watterson's creation of a spendthrift trust for her husband.

When, as here, a husband and wife hold title as tenants by the entireties, the judgment creditor of the husband or of the wife has no lien against the property held as entireties, and no standing to complain of a conveyance which prevents the property from falling into his grasp. *C.I.T. Corp. v. Flint,* 333 Pa. 350, 5 A. 2d 126 (1939).

Furthermore, even if the acts performed by the husband and wife were in contemplation of death of the wife, we fail to perceive why that would alter the situation and cause the spendthrift trust to be deemed invalid. The husband and wife, under existing Maryland law, had a right to dispose of the property *sans* regard to the judgment against the husband. *Hertz v. Mills, supra.* The law does not specify the time frame in which the conveyance may be made, nor does it permit a court to conclude, simply because the wife died within a relatively short period of time from the dates of the conveyance and execution of the will, that the husband is, in fact, the settlor of the trust. What the trial court has done is to strip from the decedent her right to dispose of her estate, within the confines of the law, as she best determines. It has assessed against her a penalty for dying soon after the conveyance and the execution of her will, and has permitted her separate estate to be invaded to satisfy her husband's creditors.

We shall reverse. In doing so, we note that the creditor is in no worse position than if the wife were still living with the property in her name or she had survived her husband.

*Judgment reversed.*
*Costs to be paid by appellee.*