WILLIAM L. COMER FAMILY EQUITY TRUST, Myra L. Comer, Trustee; American Way Trust, Myra L. Comer, Trustee; Financial Freedom Consultants, William L. Comer, Trustee; OSA Development Company with OSA Explorations as General Partner, William L. Comer, Trustee; Burica Development Company, with Burica Explorations as General Partner, William Comer, Trustee, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 87–CV–30092 PH.

United States District Court, E.D. Michigan, S.D.

Feb. 16, 1990.

Peter C. Jensen, Saginaw, Mich., for plaintiffs.

Michael Hluchaniuk, Bay City, Mich., Tom Clark, Tax Div., Justice Dept., Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES HARVEY, District Judge.

This is a wrongful levy action brought pursuant to 26 U.S.C. § 7426. The plaintiffs assert that the Internal Revenue Service (IRS), in attempting satisfaction of income tax deficiencies owed by William L. and Myra Comer, levied against property owned by the plaintiffs. The government, conversely, contends that the plaintiffs are merely the "alter ego" of the taxpayers, and that therefore the IRS properly levied against the relevant property. The Court's sole function is to therefore determine, for purposes of the challenged levy, the ownership of the property at issue. The parties presented their proofs in a one day bench trial; the Court now offers its findings of fact and conclusions of law. Fed.R.Civ.P. 52.

## I. FINDINGS OF FACT

1. Myra and William L. Comer are husband and wife, residing in Clare, Michigan.

2. On January 17, 1975, William L. Comer, as grantor, created the William L. Comer Family Equity Pure Trust (hereafter Family Trust), naming Myra Comer and Phyllis Carrow as original trustees. Phyllis Carrow is William L. Comer's mother.

3. The Declaration of Trust included a conveyance from William L. Comer to the Family Trust of the exclusive use of William L. Comer's "lifetime services" and all of his "earned remuneration."

4. The Declaration of Trust does not name beneficiaries; instead, the declaration creates "beneficial interest" certificates such that beneficiary status is determined by ownership of such certificates.

5. On January 23, 1975, by quit claim deed, Myra Comer conveyed all of her interest in real property located at 3261 E. Colonville Road, Clare, Michigan (hereafter 3261 property) to William L. Comer.

6. On January 23, 1975, Myra Comer assigned to William L. Comer all of her interest in the land contract related to the 3261 property.

7. On January 23, 1975, William L. Comer, by quit claim deed, conveyed the 3261 property to the Family Trust.

8. On January 23, 1975, William L. Comer assigned the land contract related to the 3261 property to the Family Trust.

9. On January 23, 1975, William L. Comer, by "bill of sale" indicating $10.00 in consideration, conveyed to the Family Trust the following property:
   a. 3261 property;
   b. 1000 shares of Solarmatics, Inc., stock;
   c. Three insurance policies;
   d. Accounts at two banks;
   e. Constitution Enterprises, a dehydrated food business;
   f. Numerous household furnishings.

10. The property referenced in finding 9 represented virtually all of William L. and Myra Comer's tangible assets as of January 23, 1975.

11. At some point following Family Trust's creation, Phyllis Carrow resigned as trustee, and William L. Comer became trustee.

12. On May 17, 1976, the trustees amended the Family Trust to make it expressly irrevocable.

13. On December 1, 1978, the Family Trust purchased, by land contract, real property located at 9260 Colonville Road, Clare, Michigan (hereafter 9260 property), from Jerry and Pamela Trask. The Family Trust paid $10,000.00 of the $64,000.00 purchase price up front. William L. and Myra Comer signed the land contract as trustees of the Family Trust.

14. The IRS levied on the 9260 property, and this property remains the residence of William L. and Myra Comer.

15. On August 19, 1980, the Family Trust was amended. Under the amendment, the grantor, William L. Comer, became the initial sole beneficiary of the trust. Other beneficiaries approving the amendment included Scott Comer, William R. Comer, Myra Comer, and the Mount Zion Constitutional Fund, a trust created by William L. and Myra Comer.

16. On September 25, 1981, the Family Trust sold 8.8 acres of the 3261 property to Byron Benchley.

17. On May 25, 1982, the Family Trust, by land contract, sold to Carl Koehn, Winnifred Koehn, and Arvilla Wiswary 3.2 acres of the 3261 property.

18. On November 1, 1976, the Family Trust, as grantor, created Try Refining Your Education—A Trust (hereafter TRYE Trust), an irrevocable trust, naming William L. and Myra Comer as trustees.

19. On November 1, 1976, the Family Trust, by Bill of Sale, conveyed to the TRYE Trust all of its accounts receivable dating from November 1, 1976, a checking account at the Farwell State Savings Bank, and a business known as T.R.Y.E.—A Trust.

20. On January 1, 1980, the Family Trust leased the 9260 property to the TRYE Trust for $650.00 per month. Although William L. Comer is designated as trustee for the Family Trust in the lease recitals, William R. Comer signed the lease in that capacity.

21. On June 1, 1980, the TRYE Trust entered into an employment contract with William L. Comer, naming William L. Comer "Executive Trustee." In consideration of his performance of the Executive Trustee's duties, William L. Comer received a salary of $10,200.00 per year, housing, and transportation. William L. Comer signed the employment contract both as trustee for the TRYE Trust and as the contractor.

22. On July 8, 1980, the TRYE Trust was amended to provide, among other things, that the grantor was the initial and sole beneficiary of the trust. At the time of the amendment, no existing beneficiaries formally approved the amendment.

23. On January 19, 1977, William L. Comer, as grantor, created an irrevocable trust, the American Way Trust (hereafter American Trust), naming William R. and Myra Comer as original trustees.

24. On January 19, 1977, by Bill of Sale, William L. Comer conveyed to the American Trust the following property:

a. 1977 Buick Riviera

b. 1977 Dodge Van

c. William L. Comer's $5378,40 personal note to the TRYE Trust.

25. On January 19, 1977, the American Trust leased to the TRYE Trust the following property:

a. 1977 Buick Riviera

b. 1977 Dodge Van

c. 1978 Buick Riviera

d. 1979 Oldsmobile 98

e. 1979 Avanti

Although William L. Comer was not designated a trustee in the American Trust's Declaration of Trust, William L. Comer signed the lease agreement in this capacity.

26. On August 25, 1980, William R. Comer was appointed trustee of the American Trust, notwithstanding the fact that he was designated as such in the Declaration of Trust.

27. On August 27, 1980, the American Trust was amended to provide, among other things, that the grantor was initial and sole beneficiary of the trust. William L. and Myra Comer signed the amendment as trustees; William R. Scott, and Myra approved the amendment as beneficiaries.

28. On September 25, 1981, William L. Comer resigned as trustee of the American Trust.

29. On January 23, 1984, Scott Comer was appointed as trustee of the American Trust.

30. Sometime in late 1983 or early 1984, the American Trust purchased a used Lincoln Continental, with Myra Comer signing the purchase agreement as trustee for the American Trust.

31. On February 1, 1982, William L. Comer, as grantor, created an irrevocable trust, Financial Freedom Consultants (hereafter FFC), naming William L. and Scott Comer as trustees.

32. Under FFC's Declaration of Trust, the grantor was sole beneficiary of the trust. Because the declaration precluded beneficiaries from participating in the management or affairs of FFC, William L. Comer, as grantor, trustee, and sole benefi-

ciary of FFC transferred his beneficial interest in FFC to the Family Trust.

33. On February 1, 1982, William L. Comer conveyed, by Bill of Sale, one hundred dollars in cash to FFC in consideration of one hundred dollars received from FFC, ostensibly for the purpose of opening a bank account on FFC's behalf.

34. Sometime in 1982, the TRYE Trust ceased operations. Thereafter, FFC leased the 9260 property from the Family Trust.

35. On August 10, 1984, William L. Comer received, by certified mail, a notice of tax deficiency from the IRS in the amount of $187,122.10. This notice pertained to tax years 1975, 1976, 1977, 1978, 1979 and 1980.

36. On October 19, 1984, the IRS filed a notice of tax lien with the Register of Deeds for Clare County, Michigan, indicating a lien against all of William L. and Myra Comer's property rights in the amount of $149,125.54, reflecting claimed deficiencies for tax years 1977, 1978, and 1979.

37. On February 13, 1987, the IRS served a notice of seizure upon the "William L. Comer Family Equity Pure Trust, as Nominee, Transferee, or Alter Ego of William L. Comer and Myra L. Comer." This notice pertained to the 9260 property held in trust by the Family Trust.

38. On or about February 13, 1987, the IRS served a notice of levy upon the Farwell State Savings Bank, thereby levying upon all the assets of the Family Trust, the American Trust, FFC, Burica Development Company, and OSA Development Company all as alleged nominees, alter egos or transferees of William L. and Myra L. Comer.

39. At all times relevant to this action, William L. and/or Myra L. Comer owned no certificates of deposit, stock, bonds, or other investments in their individual or joint names.

40. At all times relevant to this action, William L. and/or Myra L. Comer owned no real property in their individual or joint names.

41. All named plaintiffs maintained separate employer identification numbers.

42. Each plaintiff maintained separate bank accounts.

43. All trusts in issue herein were filed with the Clare County, Michigan, Probate Court and any and all amendments to the trusts were made pursuant to order of the Clare County, Michigan, Probate Court.

## II. CONCLUSIONS OF LAW

1. Jurisdiction lies in this Court under 28 U.S.C. § 1346.

■ 2. Generally, the government may levy against only property owned by the pertinent taxpayer, and not against any third party's property. *United States v. Kaufman*, 267 U.S. 408, 45 S.Ct. 322, 69 L.Ed. 685 (1925).

3. If an individual or entity believes that the government has wrongfully levied against its property, the individual or entity may challenge the levy pursuant to 26 U.S.C. § 7426. The critical issue in a § 7426 action is, therefore, whether the entity bringing the action, and not the taxpayer, owns the levied-upon property. *Shannon v. United States*, 521 F.2d 56 (9th Cir.1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976).

■ 4. Section 7426 plaintiffs bear the initial burden of proving some interest in the levied-upon property. *Morris v. United States*, 813 F.2d 343, 345 (11th Cir. 1987). Neither Burica Development Company nor OSA Development Company introduced any evidence at trial concerning any interest in levied-upon property. These plaintiffs are therefore dismissed due to a lack of standing to challenge the government's levies.

5. "Generally, state law controls the determination of the nature and extent of the taxpayer's property interests in any given property." *James E. Edwards Family Trust by Edwards v. United States*, 572 F.Supp. 22, 24 (E.D.N.M.1983) (citations omitted).

6. Courts have also, however, referenced federal tax law in evaluating property ownership for § 7426 purposes. *Edwards, supra*.

7. This Court must therefore determine whether, under Michigan law, the Family Trust, the American Trust, and FFC should be considered owners of the 9260 property and three Farwell State Savings Bank accounts levied-upon by the government.

8. In *Loving Saviour Church v. United States*, 728 F.2d 1085 (8th Cir.1984), the court sustained the district court's application of South Dakota fraudulent conveyance and "alter ego" law in rejecting an unincorporated religious association as the owner of certain realty and personalty for § 7426 purposes. The district court initially found that because the taxpayers possessed and controlled the property at issue, the asserted transfers of the property to the plaintiff church "were a sham, constituted a fraudulent conveyance, and may be levied upon to satisfy" the relevant tax liability. 728 F.2d at 1086, citing *Carr Enterprises, Inc. v. United States*, 539 F.Supp. 528 (D.S.D.1982), *aff'd*, 698 F.2d 952 (8th Cir.1983).

Next, the district court examined several factors, including the following, in concluding that the plaintiff was merely the alter ego of the taxpayers, and therefore lacking § 7426 standing: (1) the treatment by the taxpayers of the plaintiff's assets as their own; (2) the control of the plaintiff by the taxpayers and their family alone; (3) the use of plaintiff's funds to pay the taxpayers' personal expenses; (4) transference of property from the taxpayers to the plaintiff for little or no consideration; and (5) the fact that the plaintiff fully supported the taxpayers in the style of their choosing. 728 F.2d at 1086.

9. Under Michigan law, "[e]very conveyance made ... with actual intent ... to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Mich.Comp. Laws Ann. § 566.17. In evaluating the legitimacy of property transfers, Michigan courts may look to "badges of fraud" in determining whether intent to defraud exists. *Farrell v. Paulus*, 309 Mich. 441, 450, 15 N.W.2d 700 (1944). Such badges involve a consideration of circumstances surrounding the pertinent transaction. In *Farrell*, the court, in setting aside certain

conveyances, noted that the challenged transactions left the transferor virtually insolvent, occurred between family members, involved little or no consideration, and that despite the conveyances, the transferor continued using the property at issue. *Id.* at 450, 451, 15 N.W.2d 700.

10. While the Court uncovered no precedent analyzing the "alter ego" theory of property ownership in the context of a trust, cases involving corporate entities provide appropriate guidance. Essentially, "[w]here [a] corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored." *Kline v. Kline*, 104 Mich.App. 700, 702, 305 N.W.2d 297 (1981), citing *People ex rel. Attorney General v. Michigan Bell Telephone Co.*, 246 Mich. 198, 205, 224 N.W. 438 (1929). In determining whether to disregard a corporate entity for purposes of ascertaining debt liability, courts look to

(1) the amount of respect given to the separate entity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators. [ ]. Factors to be considered include undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham. [ ].

*Laborers' Pension Trust Fund v. Weinberger Homes, Inc.*, 872 F.2d 702, 704–705 (6th Cir.1988), citing *Contractors, Laborers, Teamsters & Engineers Health Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir.1985) (further citations omitted). The above factors are not, however, all-inclusive, and "[t]he entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." *Bodenhamer Building Corp. v. Architectural Research Corp.*, 873 F.2d 109, 111 (6th Cir.1989), quoting *Klager v. Robert Meyer Co.*, 415 Mich. 402, 329 N.W.2d 721 (1982).

■ 11. Indicia of improper property transfers, in light of the foregoing, exist in the present case. William L. and Myra L. Comer (Mr. and Mrs. Comer) transferred essentially all of their real and personal property, as well as all of Mr. Comer's future earnings, to the Family Trust in exchange for paltry consideration. Subsequent to this transfer, the Comers were, for all intents and purposes, insolvent. Thereafter, the Family Trust sold to third parties the original realty conveyed to the trust, while purchasing the 9260 property, levied-upon by the IRS and material to this action. The Comers continue to live in the 9260 property, and are therefore using the property as their own. Similarly, all of the property conveyed to the American Trust and to FFC originated with either Mr. Comer or the Family Trust, and the Comers continue to use such property. The "lease" of the 9260 property by FFC from the Family Trust, ostensibly as part of Mr. Comer's compensation as Executive Trustee of FFC, is of no consequence. The Court views any and all transactions between Comer-created trusts, or between the trusts and Mr. or Mrs. Comer, as legal nullities, effectively no more substantial than the intra-family transactions condemned in *Farrell.* No serious argument can be propounded that "arms-length" negotiations occurred between any of these entities respecting any lease or loan transaction when the grantors, trustees, and beneficiaries of the trusts are, without exception, Comer family members. Several instances concerning the signing of documents on behalf of the trusts demonstrate the Comers' disregard of each trust's legal form; the lease agreement between Family Trust and TRYE Trust is signed by William R. Comer as Family Trust's trustee, when he possessed no such capacity, and Mr. Comer signed a vehicle lease agreement as trustee of the American Trust on the date of its formation despite the fact that the declaration of trust identified only William R. and Myra Comer as American's trustees. Perhaps even more illustrative of the Comers' disregard of each trust's independent identity was Mr. Comer's response when queried about a possible conflict between his serving as Executive Trustee of TRYE Trust given the conveyance to the

Family Trust of all of his lifetime services: Mr. Comer simply asserted that he ignored the relevant language in the Family Trust's Declaration of Trust. Finally, and importantly, Mr. Comer offered no convincing evidence at trial indicating any independent economic purpose for the existence of any of his trusts. Close examination of the trusts' relationship demonstrates that their sole function is to manipulate the Comers' income and assets. The Court therefore concludes that, under Michigan law, the plaintiffs cannot assert ownership of the levied-upon property, and therefore lack standing to challenge the relevant levies.

12. The plaintiffs additionally argue that the IRS' assessments against the Comers are barred due to expiration of the statute of limitations. This argument, however, ignores the established principle that in § 7426 actions, the underlying tax assessment is presumed valid, and such assessment can only be challenged by the relevant taxpayer. *Rabinof v. United States,* 329 F.Supp. 830 (S.D.N.Y.1971); *Shannon v. United States,* 521 F.2d 56 (9th Cir.1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976). Since plaintiffs are not the relevant taxpayer, this claim is rejected.

■ 13. The plaintiffs' notice of levy argument is also defective. Service of notice of levy need not be made upon potential third party owners of levied-upon property to satisfy the notice provisions of the federal tax law. *Douglas v. United States,* 562 F.Supp. 593 (S.D.Ga.1983). Moreover, as the IRS served proper notice of levy regarding the 9260 property upon the Comers, the plaintiffs received at a minimum constructive notice of this levy.

14. Finally, plaintiffs urge that the government is precluded from levying against the property at issue under the doctrines of res judicata, estoppel, and elections. This contention is derived from certain agreements between the Comers, the plaintiffs, and the IRS concerning tax liabilities for the years 1982 and 1983. Essentially, plaintiffs assert that these agreements, in that they reflect no tax liability on the plaintiffs' behalf for the pertinent years, prevent the government from thereafter attempting to assign tax liability

against the plaintiffs. Thus, plaintiffs argue, the government improperly levied against the property at issue in this case.

This Court's finding, reflected in this opinion, that the Comers own the property at issue for tax levy purposes renders the plaintiffs' final argument ineffective. Because plaintiffs have failed to demonstrate the required interest in the pertinent property, they cannot now claim that the government is violating the terms of an agreement allegedly absolving the plaintiffs from future tax liability. Simply put, the plaintiffs cannot assert any detriment from the government levying on someone else's property.

## III. CONCLUSION

Based upon the preceding, the Court finds for the defendant, sustains the levies at issue, and ORDERS that the plaintiffs take nothing. Judgment shall enter accordingly.

IT IS SO ORDERED.