**WILSHIRE CREDIT CORPORATION, Plaintiff,**

v.

**Stanley KARLIN, et al., Defendants.**

**No. Civ.A. AW 96–943.**

United States District Court, D. Maryland, Southern Division.

Dec. 8, 1997.

William A. Isaacson, Washington, DC, for Wilshire Credit Corp.

Yale L. Goldberg, Bethesda, MD, M. Michael Cramer, Benjamin A. Klopman, Rockville, MD, for Stanley Karlin, Robert Dawson.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

### I

Presently before the Court are cross-motions for summary judgment. In ruling on the motions, the Court has considered the briefs of the parties, the arguments of counsel at a hearing in open court, and the entire record.

## II

Allan and Mary Rozansky (hereinafter sometimes "the Rozanskys", and "the settlors") established a trust for the benefit of their two minor children on July 21, 1982. The children, and any other future lineal descendants of the Rozanskys, are the sole beneficiaries of the trust. The trustees are Stanley Karlin, a former neighbor of the Rozanskys, and Robert Dawson, Mary Rozansky's brother. The trust vests the trustees with discretion to distribute funds for the benefit of the beneficiaries during the lifetime of the settlors.[1] Upon the death of the settlors, the trust is to be distributed equally among the beneficiaries so long as they are at least 25 years old. Because the trustees hold legal title and the beneficiaries hold equitable title to the trust, the Rozanskys have no remaining legally recognizable property interest. The trust is irrevocable, and cannot be modified in any fashion by either settlor.

When the trust was created, its sole asset was the home of the Rozanskys. The Rozanskys retained a life estate, but transferred the remainder interest to the trust. In 1992, the trust purchased the Rozanskys life estate for $50,000. Thus, the trust owns a complete interest in the home (subject to its mortgage). The settlors are tenants of the trust, and pay "rent" which covers the cost of the monthly mortgage, insurance, and other related expenses. The trustee Karlin, who authorized the transaction, concedes that the decision to purchase the life estate was made at the direction of the Rozanskys. No alternative investments were considered and no one other than the Rozanskys was consulted respecting the prudence of the investment. In setting the rent to be paid by the settlors, Karlin never took into account any factor other than the fact that the payment would equal the monthly mortgage.

In 1994, the trust acquired a $695,000 beach home in Delaware which the Rozanskys used for vacations. Karlin, the trustee who authorized the purchase, again did so at the request of the settlors. Karlin had never seen the home before the transaction. The trust also purchased furniture for the beach home for $20,000. Because the trust did not have cash assets, the purchase was financed by refinancing the mortgage on the existing home. The Rozanskys' rent payments were increased to match the increased mortgage payments. These actions were all taken at the direction of the settlors.

In 1995, the beach home was sold. This action was taken because Karlin was told by the Rozanskys that they could not afford to pay the rent on the two homes. The Rozanskys themselves found the realtor and handled the sale of the beach home; the trustees never spoke with the realtor. The beach house was finally sold for approximately the same price as its initial purchase, excluding realtor fees and other closing costs. After the sale, the trust held a cash balance of approximately $144,000.

Since the sale of the beach home, the Rozanskys have defaulted on rental payments owed to the trust. The Rozanskys have executed promissory notes to the trust. However, the notes provided no date of repayment, and thus far no repayment has been made. The trust has dissipated the $144,000 in cash making mortgage payments. Thus, the trust has accumulated no investment or cash assets for the benefit of the children. The only money the trust has ever paid for the support of the children was a summer camp bill of less than one thousand dollars. According to the trustees, at no time has any of the property belonging to the trust been disbursed to the Rozanskys. According to Trustee Karlin, major decisions regarding the management of the trust property were made with the benefit of independent professional advice. The trustees admit that certain of the acts taken on behalf of the trust were undertaken at the direction of the settlors. While the trustees appear to have acted at times at the direction of the Rozanskys, the Plaintiff makes no allegation that the Rozanskys' conveyances of the property held by the trust were fraudulent.

Plaintiff, the successor in interest to a creditor of the Rozanskys, secured a stipu-

---

**1.** The trust document also vests the trustees with the power to "mortgage, lease, ... [or] borrow on ... any and all of the funds and properties of the Trust."

lated judgment against them on July 16, 1990, in the amount of approximately $1.7 million.

## III

### A.

The parties have filed cross-motions for summary judgment. Summary judgment is appropriate where there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The evidence of the non movant is to be believed and all justifiable inferences drawn in his favor, but a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985))

### B.

In this action, Plaintiff seeks to recover the assets of the trust as satisfaction of the debt of the Rozanskys. The defendant trust moves for summary judgment, arguing simply that a creditor of the settlors of the trust has no valid claim to the res of the trust. Plaintiff has filed a cross-motion for summary judgment, arguing that because the uncontradicted evidence clearly shows that the Rozanskys have so dominated the trust that it is effectively their "alter ego," this Court should equitably disregard the trust and treat its assets as those of the Rozanskys.

The Plaintiff's argument is as follows: "Under Maryland law, where an entity is a mere 'creature' of another party, the entity may be treated as the alter ego of the dominating party." In support of this position, Plaintiff cites three cases that conclude, essentially, that courts will equitably disregard a corporate form where such disregard is necessary to prevent fraud or to enforce a "paramount equity." *Colandrea v. Colandrea,* 42 Md.App. 421, 428, 401 A.2d 480 (1979) (tort claim for fraud may be had against sole shareholder of corporation); *Bart Arconti & Sons v. Ames–Ennis,* 275 Md. 295, 312, 340 A.2d 225 (1975) (corporate entity may be disregarded to prevent fraud).

Under Maryland law, the question of whether a party exerts sufficient "dominion" and "control" over a corporation to warrant the conclusion that the corporation is a "mere instrumentality" of another turns on the facts of the particular case. As one court explained, "(T)he corporate entity is disregarded ... wherein it is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation. The control necessary to invoke what is sometimes called the 'instrumentality rule' is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." *Dixon v. Process Corporation,* 38 Md.App. 644, 653, 382 A.2d 893 (1978). The Plaintiff here argues that, because the trust operated exclusively at the command of the Rozanskys, it must be concluded that the trust was so dominated and controlled by the settlors that it was nothing more than the settlors' instrumentality.

However, Plaintiff cites no Maryland case, and the Court's research has revealed no Maryland authority, supporting the application of this corporate "alter ego" principle to a trust. The Plaintiff does point to several federal cases where courts have applied the corporate "alter ego" doctrine to trusts. In *William L. Comer Family Equity Trust v. U.S.,* 732 F.Supp. 755 (E.D.Mich.1990), aff'd., 966 F.2d 1455 (6th Cir.1992), the court acknowledged that it had "uncovered no precedent analyzing the 'alter ego' theory of property ownership in the context of a trust," but reasoned that "cases involving corporate entities provide appropriate guidance." *Id.* at 759. The court went on to explain that "where a corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity can be ignored." *Id.* By parity of logic, where a trust "is a mere agent or

'instrumentality" of another party, the trust may similarly be disregarded. *Id.* Other federal courts have accepted the view that the corporate "alter ego" doctrine may be applied to trusts. E.g., *F.P.P. Enterprises v. U.S.*, 830 F.2d 114, 118 (8th Cir.1987); *Loving Saviour Church v. U.S.*, 728 F.2d 1085, 1086 (8th Cir.1984); *U.S. v. Boucher*, 735 F.Supp. 987, 988 (D.Col.1990).

■ The cases make clear, however, that whether a court is to equitably exercise the "alter ego" doctrine as to a particular entity must be determined in accordance with the law of the forum state. See *Loving Saviour Church*, 728 F.2d at 1086 (applying South Dakota law); *Comer Trust*, 732 F.Supp. at 759 (applying Michigan law).

■ The scant authority pertinent to the inquiry appears to suggest that, under Maryland law, a settlor's access to the trust res will not defeat an otherwise valid trust. In *United States v. Baldwin*, 283 Md. 586, 391 A.2d 844 (1978), the government sought to impose a tax lien on the assets of a trust established by the settlor before he incurred his tax liability. The trust was irrevocable, but the settlor maintained the right to receive the income from the investments and other personalty of the trust during his lifetime. While the trustee was a third party bank, the settlor maintained the right to name himself as trustee. The Court concluded that "the settlor of an irrevocable trust, reserving to himself only the right to receive, during his lifetime, the income from the investments and other personalty of the trust does not have such an estate in the corpus thereof as constitutes 'property and rights to property' under Maryland law," and thus the lien could not be attached. *Id.* at 595–596, 391 A.2d 844.

■ This seems to be the consistent rule of Maryland law. In *Mercantile Trust Co. v. Bergdorf & Goodman*, 167 Md. 158, 173 A. 31 (1934), the court explained that "[w]ith the ownership of the corpus in the [beneficiary] remaindermen, even though possession may be delayed or defeated by the will of the donor, there being no evidence of fraud in the inception of the trust, and none in the instrument creating it, the corpus cannot be attached to satisfy the creditors of the settlor." *Id.* at 166, 173 A. 31. Similarly, after reviewing the relevant precedent, the U.S. Claims Court found "no assumption by the Maryland courts that the wife may be deemed merely the husband's alter ego for purposes of insulating property from a settlor's creditors in a non-fraudulent conveyance transaction." *Estate of German v. U.S.*, 7 Cl.Ct. 641, 645 (1985), citing *Watterson v. Edgerly*, 40 Md.App. 230, 388 A.2d 934 (1978). Likewise, in the present case the Rozanskys retain no ownership interest in the corpus of the trust benefitting their children and there is no allegation of fraud in the establishment of the trust;[2] accordingly, it is logical to conclude that, under Maryland law, the trust res is beyond the reach of the Rozanskys' creditors.

■ Further, even assuming that the "alter ego" doctrine were applicable to properly established trusts in Maryland, the Plaintiff has not offered an adequate basis for invoking "alter ego" principles here. Again, there is no allegation of any fraud on the part of the Rozanskys in conveying the property to the trust; Plaintiff merely contends that the Rozanskys should not be able to evade their legal obligations through a trust device that they dominate and control. Concededly, this argument finds support in the out-of-state authority referred to by Plaintiff. "[W]here [a] corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored." *Comer Trust*, 732 F.Supp. at 759. The Maryland courts, however, have adopted a somewhat different view of the "alter ego" doctrine.

In *Arconti*, the Maryland Court of Appeals acknowledged that "although the courts will, in a proper case, disregard the corporate entity," it appears that such a "proper case" may only be found "where it is necessary to prevent fraud or enforce a paramount equity." *Arconti*, 275 Md. at 310, 340 A.2d 225.

---

**2.** It is interesting to note that the conveyance into the trust of the Rozanskys' life estate interest in the property occurred in 1992, two years after the judgment was entered. Nonetheless, Plaintiff makes no allegation that this subsequent conveyance was fraudulent.

Notably, the *Arconti* court specifically overruled a lower court's determination that the "alter ego" doctrine may be applied "in order to prevent evasion of legal obligations." *Id.* at 311–312, 340 A.2d 225. Thus, in *Arconti,* even though three corporations commingled equipment, operated from a single place of business, permitted one corporation to become dormant as the two other corporations improved, and made personal loans and transferred insurance policies to the principals, the "alter ego" doctrine could not be applied to hold the dominant corporations and principals liable for the obligations of the indebted corporation because there was no showing of fraud.

▮ Similarly, even assuming the general applicability of the "alter ego" doctrine to trusts in Maryland, there can be no application of the doctrine in this case. There has been no showing of fraud here. While Plaintiff generally avers that the Rozanskys have "fraudulently shelter[ed] assets from their creditors," there has been no contention that the property held by the trust was fraudulently conveyed. While it is true that a settlor cannot place assets in trust for the settlor's own benefit in order to frustrate his or her own creditors, in absence of a fraudulent conveyance of the property, the property becomes an asset of the trust when conveyed; non-beneficiary settlors no longer have assets to shield. Inasmuch as the only "fraudulent" conduct of the Rozanskys is the domination of the trust while failing to honor legal obligations, this does not warrant the application of the "alter ego" doctrine under Maryland law. *Arconti,* 275 Md. at 311–312, 340

A.2d 225.[3] Indeed, even in the out-of-state cases relied upon by the Plaintiff, in every instance the "alter ego" doctrine was applied in concert with an allegation of a fraudulent conveyance. See, e.g., *F.P.P. Enterprises,* 830 F.2d at 118 (affirming conclusion that "the trusts were shams and fraudulent conveyances"); *Loving Saviour Church,* 728 F.2d at 1086 (applying "alter ego" as an alternative to conclusion that "the property transfers to the church were a sham"); *Boucher,* 735 F.Supp. at 988 (government argues alternatively that "the trusts are void as fraudulent conveyances, or that the trusts are the settlor's alter egos"); *Comer Family Trust,* 732 F.Supp. at 760 (relying on "indicia of improper transfers" in applying "alter ego" doctrine).

▮ It is apparently true that the trustees have at times acted at the behest of the Rozanskys, though they are under no legal obligation to do so.[4] Nonetheless, to the extent that the trust was properly created and the property properly transferred to it, the Court must conclude that the trust res is now beyond the reach of the Rozanskys' creditors, notwithstanding Plaintiff's prayer for equitable application of the "alter ego" doctrine. Further, even assuming "alter ego" principles apply to trusts in Maryland, Plaintiff here points to no fraudulent conduct other than the fact that the Rozanskys have "controlled" the trust while failing to pay their debts. It seems clear that under Maryland law, the evasion of legal obligations does not warrant the invocation the of "alter ego" doctrine. Accordingly, Plaintiff has no legal claim to the assets of the trust.

3. It is true that "alter ego" principles may be invoked to "enforce a paramount equity" as well as to prevent fraud. However, the enforcement of "a paramount equity" rationale appears to be of limited application in Maryland. See *Travel Committee v. Pan Am.,* 91 Md.App. 123, 158, 603 A.2d 1301 (1992) ("Notwithstanding its hint that enforcing a paramount equity might suffice as a reason for piercing the corporate veil, the Court of Appeals to date has not elaborated upon the meaning of the phrase or applied it in any case of which we are aware"). In any event, the Court concludes that principles of fundamental equity and fairness do not compel the invalidation of a trust for the benefit of minor children, in favor of creditors of the settlor, simply because the trust's third-party trustees may have been less than diligent in the discharge of their duties.

4. Indeed, the trustees do so at their own peril. It is black letter law that the trustees of a trust owe a duty of loyalty to the beneficiaries of the trust. "Even if a trustee has no personal stake in a transaction, the duty of loyalty bars him from acting in the interest of third parties at the expense of the beneficiaries." *Trustees of Employees Retirement System of Baltimore v. Baltimore,* 317 Md. 72, 109, 562 A.2d 720 (1989). It does not appear, however, that a creditor of the settlor has standing to bring a claim of breach of fiduciary duty against the trustees. See *Parish v. Md. & Va. Milk Producers,* 261 Md. 618, 277 A.2d 19 (1971) (suggesting that a "fiduciary relationship" is necessary to give "former members the right to maintain this action").

## IV

For the reasons set forth, the Defendants' motion for summary judgment must be granted, and Plaintiff's cross-motion for summary judgment must be denied.