**UNITED STATES of America, Plaintiff,**

**v.**

**William L. COMER, Myra Comer, and William L. Comer Family Equity Pure Trust a/k/a William Comer Family Trust, as nominee, transferee and/or alter ego of William and Myra Comer, Defendants.**

**No. Civ.A. 95–CV–10182–BC.**

United States District Court, E.D. Michigan, Northern Division.

March 19, 1998.

---

Doris Coles, U.S. Department of Justice, Tax Division, Washington, DC, for Plaintiff.

Mr. Jeffrey Dickstein, Tulsa, OK, for Comer & Trusts.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 56) AND DEFENDANT COMERS AND TRUST'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 60)

BINDER, United States Magistrate Judge.

### I. *RECOMMENDATION*

**IT IS RECOMMENDED** that plaintiff's and defendants' motions both be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. that as to the validity of notices, demands, and assessments, plaintiff United States' motion be **GRANTED;**

2. that as to the enforceability of pre-bankruptcy petition tax liens for the years 1976, 1977, and 1985, both plaintiff's and defendants' motions be **DENIED,** as I conclude that although plaintiff's claims are not barred by *res judicata,* there is nonetheless on this record a genuine issue of contested material fact as to whether the defendants willfully evaded their obligation to pay taxes within the meaning of 11 U.S.C. § 523(a)(1)(C);

3. that as to the enforceability of post-bankruptcy petition liens and tax penalties for the years 1982 and 1983, plaintiff United States' motion be **GRANTED,** as I conclude that the defendants are liable for the full value of these liens and penalties, since the

underlying property did not pass through the bankruptcy estate. I further conclude that the value of these liens is not limited to the amounts set forth in the bankruptcy schedules.

4. that as to the valuation of the defendants' underlying property subject to any valid tax liens, plaintiff United States' motion be **GRANTED,** as I conclude that under *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), any appreciation in the value of the underlying property accrues to the benefit of the plaintiff as lien holder; and

5. that as to the defendants Schulz, the court **GRANT** summary judgment against them as they have failed to properly respond to the Clerk's Entry of Default against them.

## II. *REPORT*

### A. *Introduction and Facts*

Pending, pursuant to an Order of Reference from United States District Judge Robert Cleland, are the above-entitled motions. (Dkts. 56 & 60) The parties agreed that this court should decide the motions on the pleadings, and therefore, after review of all the pleadings and exhibits, these motions are ready for Report and Recommendation.

The United States seeks to reduce to judgment outstanding federal income tax liabilities assessed against the defendants for unpaid federal income taxes for the years 1976, 1977, 1982, 1983 and 1985, totaling $176,-183.48, plus statutory additions from March 12, 1992; and foreclose the federal tax liens against defendants' interest in certain real property (the "underlying property") located in Clare, Michigan.

The defendants argue that they discharged their tax liabilities in bankruptcy. With regard to their bankruptcy, the Comers filed a Chapter 13 petition in United States Bankruptcy Court for the Eastern District of Michigan, Northern Division, in February 1987.[1] On the bankruptcy schedules, the Comers showed the Internal Revenue Service ("I.R.S.") as a creditor for unpaid income

taxes for the years 1981, 1983, 1984 and 1986. (Pl.'s Mot., Ex. 13) Thereafter, the Bankruptcy Court issued an Interim Order advising creditors of the injunction against them, and in March 1987, the court mailed a notice to creditors regarding the creditors' meeting, filing of the creditors' claims, and the automatic stay.

In April 1987, the Comers converted their Chapter 13 petition to a Chapter 7 bankruptcy petition. Thereafter, the Comers filed new schedules, and the I.R.S. was listed as a creditor with respect to unpaid income taxes for the years 1976, 1977, 1978, 1979, 1980, 1982 and 1985. In May 1987, the I.R.S. filed an objection to the Proposed Plan of Reorganization but apparently, the I.R.S. did not file a proof of claim and did not attempt to include the underlying property into the bankruptcy estate. The Automatic Stay was temporarily lifted for the sole purpose of allowing the Comers and the I.R.S. to determine the Comers' tax liability for the years 1982 and 1983 in the United States Tax Court. On August 4, 1987, the Bankruptcy Court issued an Order of Discharge of Joint Debtors. The I.R.S. did not object to the Order of Discharge, and on August 19, 1987, the Bankruptcy Court issued its final order closing the bankruptcy case.

During the pendency of the petition in Bankruptcy Court, the "William L. Comer Family Trust" filed suit against the United States and the I.R.S. in this Court, attempting to show that the Trust was the true owner of the underlying property, and not the Comers as individuals. On February 16, 1990, United States District Judge James Harvey entered his findings and judgment, concluding that the Comers, as individuals, were the owners of the underlying property and not the Trust. *See, William L. Comer Family Equity Trust v. U.S.,* 732 F.Supp. 755 (E.D.Mich.1990). Judge Harvey found that "[c]lose examination of the trusts' relationship demonstrates that their sole function is to manipulate the Comers' income and

---

1. On February 12, 1987, the I.R.S. served levies and notices of seizure against property that the Comers had already placed in a purported family trust. Eleven days later, the Comers filed their Chapter 13 petition.

assets." *Id.* at 760.[2]

Subsequently, the Comers attempted to reopen the bankruptcy proceedings to determine the dischargeability of their tax liabilities for the years 1976, 1977 and 1985, and to value the property of the estate at the time of the filing of the bankruptcy. The government objected to the reopening of the bankruptcy estate, and on July 1, 1996, the Bankruptcy Court issued an order directing the clerk to reclose the case.

In the instant motion, the United States argues that the Comers created a family life estate trust which was "bogus" and solely for the purpose of avoiding federal income tax obligations. (Pl.'s Mot., 2) The government argues that the income generated from the sale of similar trusts resulted in federal income tax liabilities to the Comers for the years 1976, 1977, 1982, 1983 and 1985. The government argues that it assessed taxes against the Comers, and the government argues that it is entitled to a presumption of correctness for that tax assessment. (Pl.'s Mot., 7–10)

The government argues that the Comers' tax liabilities for 1976, 1977 and 1985 were not discharged in bankruptcy because the Comers "willfully attempted to evade or defeat the tax," which is not an effective discharge in bankruptcy. (Pl.'s Mot., 10–11) The government argues that the Comers need not have committed an "affirmative act" to have "willfully attempted to evade" the tax. Rather, the government contends that the Comers merely needed to have acted "voluntarily, consciously and intentionally." (Pl.'s Mot., 11) The government argues that the Comers acted voluntarily, consciously and intentionally in attempting to evade or defeat their taxes by establishing "bogus" trusts, circulating tax protester propaganda during the attempted sale of their residence, and financial inability was not the cause for their failure to pay taxes. (Pl.'s Mot., 11–12)

With regard to the 1982 and 1983 tax years, the United States had not yet assessed taxes for those years before the Comers filed their bankruptcy petition, and thus, the government argues that the bankruptcy did not discharge the defendants' tax liabilities for those years. (Pl.'s Mot., 13)

Further, the government argues that any appreciation in the value of the underlying property accrues to the benefit of the United States as the lien holder. Therefore, the government argues that it is entitled to foreclose its federal tax liens, sell the underlying property, and retain all amounts in excess of the balance on the land contract to satisfy its federal tax liens. (Pl.'s Mot., 13–14)

Finally, the government argues that Wayne and Carolyn Schulz were joined as parties to this action because they retained legal title to the underlying property on a land contract. However, these individuals have failed to answer or move with respect to the complaint. The government argues that their time for doing so has expired, and as a consequence, after default has been entered against the Schulzs, summary judgment should be granted in favor of the government, foreclosing any interest to the property that these individuals may claim.

The defendant Comers have filed a response in opposition to plaintiff's motion, and they have filed a brief in support of a cross motion for summary judgment. (Defs.' Br., Dkt. 61) There, the defendants initially argue that certain language used by the government in their motion, i.e., "bogus," is "impertinent and scandalous" and should be stricken from the record. The defendants argue that this language goes to the state of mind of the defendant Comers regarding their tax liabilities, and the defendants argue that without proofs in support, the government should not be permitted to use such language.

The defendants do not contest the government's argument that it had valid liens for all the tax years in question. However, defendants do argue that the liens and penalties were discharged by the bankruptcy proceedings. Further, defendants argue that a ma-

---

**2.** The Comers challenged Judge Harvey's jurisdiction and findings in an earlier motion for partial summary judgment filed in this case. I suggested that the Comers' motion be denied (Dkt. 45), and Judge Cleland subsequently adopted that Report and Recommendation. (Dkt. 50)

terial question of fact exists as to the amount of money the government is entitled to collect on those liens.

At the same time, defendants argue that the issue of dischargeability of the Comers' tax liabilities for the years 1976, 1977 and 1985 is barred by the doctrine of *res judicata,* or in the alternative, whether or not the tax liabilities for those years were discharged in bankruptcy involves the state of mind of the Comers which raises a material question of fact precluding summary judgment. Defendants argue that they are entitled to bifurcate the tax liability for the years 1976, 1977 and 1985 into secured and unsecured taxes, and they argue that the government's liens for the years 1976, 1977 and 1985 were only secured to the extent of the value of the Comers' bankruptcy estate at the time they filed their bankruptcy petition. The defendants argue that the value of their bankruptcy estate at the time of the filing of the bankruptcy was $1000.

Furthermore, the defendants argue that the bankruptcy discharged all I.R.S. penalties. The defendants argue that the government's liens for the tax years 1982 and 1983 attached only to the Comers' post-petition acquisitions, and therefore, the underlying property cannot serve as the basis for a lien for those years. (Defs.' Br., 15–17) Finally, the defendants argue that the value of the government's pre-petition liens are determined by the value of the defendants' bankruptcy estate at the time of the filing of the bankruptcy petition, and therefore, the government is not entitled to any appreciation in value of the underlying property. (Defs.' Br., 17–25)

The government filed a Reply to the Comers' Cross Motion and Motion in Opposition. (Pl.'s Reply, Dkt. 67) The arguments made there by the government will be summarized more fully later in this Report.

### III. *LAW AND ANALYSIS*

#### A. *Motion Standards*

A motion for summary judgment will be granted under Fed.R.Civ.P. 56(c) where there is no genuine issue of material facts, and the moving party is entitled to judgment as a matter of law. All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party thus bears a considerable burden. The Court of Appeals for the Sixth Circuit has held that a

> District Court may grant a motion for summary judgment only if it finds from the whole record before it that there are no material facts which are in dispute. It may not make findings of disputed facts on a motion for summary judgment. The movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and that the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion. The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently.

*Watkins v. Northwestern Ohio Tractor Pullers Assn.,* 630 F.2d 1155, 1158 (6th Cir.1980) (citations omitted). *See also, Ghandi v. Police Dept. of Detroit,* 747 F.2d 338 (6th Cir. 1984), *cert. denied, sub. nom. Ghandhi v. Fayed,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988).

Summary judgment is proper when the moving party shows that the non-moving party, after sufficient discovery, is unable to meet its burden of proof. *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548. However, to defeat the motion, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is the plaintiff's obligation to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Not every issue of fact or conflicting inference presents a genuine issue of material fact

requiring the denial of summary judgment. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Irrelevant and unnecessary facts should have no bearing on a trial court's determination on a motion for summary judgment. *Id.* at 248, 106 S.Ct. 2505. Accordingly, only germane facts that go to the heart of the party's suit deserve consideration. The courts will not entertain metaphysical doubts as material facts to defeat the motion. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

### B. *The Federal Tax Assessments—Notice and Demand*

▮ Initially, the government argues that it properly assessed taxes against the Comers, and it argues that it is entitled to a presumption of correctness for that tax assessment.

> Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

26 U.S.C. § 6303(a).

A federal tax assessment is presumed correct. *Calderone v. United States,* 799 F.2d 254, 258 (6th Cir.1986). A Certificate of Assessment and Payment which lists "First Notice" dates for each assessment constitutes presumptive proof that the I.R.S. gave notice of the assessments and made demand for payment. *See, Nassar v. United States,* 792 F.Supp. 1040, 1042–43, n. 4–5 (E.D.Mich. 1992); *United States v. Morgan,* 781 F.Supp. 1219, 1221 (E.D.Mich.1991).

Here, the government argues that the Certificates of Assessments and Payments issued to the Comers clearly reflected "First Notice," and therefore, notices of assessment and demands for payments were properly given to the defendants. (Pl.'s Mot., 10; Exs. 1–5) Thus, the government argues that its liens were valid. Defendants expressly acknowledge that the government had valid liens for all the tax years in question. (Defs.' Br., 3) In light of the law cited above, the fact that these defendants were sent notices of the assessments and liens, coupled with the defendants' concession that the government has valid liens for all the tax years in question, I suggest that the government does in fact have valid liens.

### C. *Pre–Petition Liens—1976, 1977 and 1985—Effect of Bankruptcy Discharge*

The Comers argue that the tax liens for the years 1976, 1977 and 1985 were discharged in bankruptcy. The government argues that the Comers "willfully attempted to evade or defeat the tax," which in turn is not an effective discharge of tax liens in bankruptcy.

Generally, a debtor, under Chapter 7 of the Bankruptcy Code, is granted a discharge from all debts that arose before the filing of the bankruptcy petition. 11 U.S.C. § 727(b). However, Section 523 provides exceptions to the discharge of various debts. The relevant part of Section 523 at issue here provides the following:

> A discharge under ... this title does not discharge an individual debtor from any debt ... for a tax or a customs duty—

> \* \* \*

> with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax. . . .

11 U.S.C. § 523(a)(1)(C).

In *United States v. Toti,* 149 B.R. 829 (E.D.Mich.1993), *aff'd.* 24 F.3d 806 (6th Cir. 1994), the defendant had failed to file federal income tax returns for seven years, and thus he incurred certain tax liabilities. The defendant thereafter filed bankruptcy seeking to discharge those tax liabilities. The district court noted that 11 U.S.C. § 523(a)(1)(C) acts as an exception to the general discharge of debts in bankruptcy

court. *Toti,* 149 B.R. at 831. The district court concluded that the proper definition of "willfully attempted to evade" in the context of a Section 523(a)(1)(C) discharge case is that found in other civil tax cases; that is, an individual willfully attempts to evade a tax by "voluntarily, consciously and intentionally" failing to remit tax funds to the government. *Id.* at 834. The district court found that the debtor need *not* have engaged in some type of affirmative action or commission. *Id.* The district court concluded that defendant's failure to file tax returns was done with the knowledge of a duty under the law to file and pay his taxes, and therefore, the failure to file was voluntary, conscious and intentional. *Id.*

### 1. The Effect of the 1987 Bankruptcy Discharge

The Comers argue that their 1976, 1977, and 1985 tax obligations were discharged in the 1987 bankruptcy, and they contend that the government made no attempt to secure a position during the pendency of the bankruptcy claim. However, a tax debt is not discharged in bankruptcy if the debtor willfully attempted in any manner to evade or defeat the tax. 11 U.S.C. § 523(a)(10)(C); *see also, Toti,* 149 B.R. at 831. Furthermore, the government is not compelled to raise a § 523(a)(1)(C) issue in bankruptcy court during the pendency of the debtor's petition, but rather the government may implicate the statute any time after the bankruptcy proceeding has completed. *See,* 11 U.S.C. § 523(c)(1); Bankr.Rule 4007(c) (discharging a debtor from debts specified in §§ 523(a)(2), (4), (6), & (15) if a creditor fails to file a complaint not later than 60 days following the first date set for the creditors' meeting, but leaving § 523(a)(1)(C) open to an indefinite time frame). Therefore, since there was no time period within which the government was compelled to raise its § 523(a)(1)(C) claim against the Comers, I suggest that the government has properly raised the issue before this court.

The Comers contend that the determination of dischargeability of the 1976, 1977, and 1985 taxes is barred by the doctrine of *res judicata,* arguing that since the Bankruptcy Court "discharged" their taxes in a "final order," the government is precluded from relitigating that issue. (Defs.' Br., 11–13) The government contends that the Bankruptcy Court did not address the issue of whether the Comers willfully attempted to evade or defeat their taxes under 11 U.S.C. § 523(a)(1)(C), and thus there exists no preclusive effect. (Gov't. Reply, Dkt. 67, 1–6) Application of *res judicata* requires the following: (1) a final decision on the merits in the first action by a court of competent jurisdiction, (2) the second action involves the same parties or their privies as the first, (3) the second action raises an issue actually litigated or which should have been litigated in the first action, and (4) an identity of the causes of action. *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 480 (6th Cir.1992). Here, the Bankruptcy Court did not address the issue of whether the Comers willfully attempted to evade or defeat their taxes under 11 U.S.C. § 523(a)(1)(C), and as mentioned before, the government was not obligated to raise this issue during the pendency of the Comers' bankruptcy petition. Therefore, I suggest that there has been no final decision on the merits of this issue, nor was the issue litigated or should it have been litigated in the bankruptcy forum. Thus, I suggest that the government's tax claims for the years 1976, 1977, and 1985 are not barred by the doctrine of *res judicata.*

### 2. 11 U.S.C. § 523(a)(1)(C)—Application to the Instant Case

The government argues that it is entitled to summary judgment as to the issue of whether the Comers "willfully attempted in any manner to evade or defeat such tax" for the 1976, 1977, and 1985 tax years. To willfully attempt to evade a tax, it is not necessary that a taxpayer engage in some type of "affirmative action," but rather a taxpayer need only have "voluntarily, consciously, and intentionally" attempted to evade the tax. *Toti,* 149 B.R. at 831–34. In *In re Sumpter,* 170 B.R. 908 (E.D.Mich. 1994), *aff'd in part, rev'd in part on other grounds,* 64 F.3d 663 (6th Cir.1995), Judge Cleland granted summary judgment in favor of the government, where the government

alleged that under § 523(a)(1)(C), the debtor had willfully attempted to evade or defeat his tax obligations by transferring part of his estate to a trust fund. In the process, he held that the government must establish the exemption by a preponderance of the evidence. *In re Sumpter,* 170 B.R. at 912; *aff'd* 1995 WL 501947, *3 (6th Cir.1995).

Here, the government points to what it believes is "sufficient evidence" that the Comers willfully attempted to evade their tax obligations: the establishment of the "bogus" alter ego family trust; Judge Harvey's rulings regarding the establishment of the "bogus" trusts; circulating tax protester propaganda during the attempted sale of their residence; the selling of schemes to other tax protesters with which to obstruct the collection of tax revenue; and, the Comers' alleged deposition statements indicating that financial inability was not the cause for their failure to pay the taxes. (Pl.'s Mot., 11–12; Pl.'s Reply, 8–10)

With regard to the creation of the Comer trusts, Judge Harvey stated that there was "[i]ndicia of improper property transfers" and "[c]lose examination of the trusts' relationship demonstrates that their sole function is to manipulate the Comers' income and assets." *Comer Family Trust,* 732 F.Supp. at 760. I therefore suggest that these findings by Judge Harvey tend to support the government's argument that the Comers voluntarily, consciously, and intentionally attempted to evade their tax obligations.

However, I suggest that the government's characterization of the Comers' activities circulating tax protester propaganda and selling schemes to other tax protesters, *without more,* is conclusory and mere conjecture. Furthermore, I suggest that the government's characterization of the Comers' deposition statements, indicating that financial inability was not the cause for their failure to pay taxes, is simply misleading. In their depositions, the Comers make statements to the effect that they had money to pay their living expenses, but the Comers never state that they had money with which to pay their taxes. (Govt.'s Mot., Exs. 15, 16) *See, In re Sumpter,* 170 B.R. at 913–14 (debtor conceding that his purpose in transferring the prop-

erties to the trust was to prevent federal tax liens from attaching to the properties). While Judge Harvey's findings with regard to the creation of the Comer trusts strongly imply that the Comers willfully attempted to evade paying their taxes, I suggest that his findings simply do not establish the government's burden to show a § 523(a)(1)(C) exemption by a preponderance of the evidence for summary judgment purposes. I therefore suggest that there is sufficient evidence to create a genuine issue of disputed material fact on this issue. Thus, I suggest that on the issue of "willfulness," both the government's Motion for Summary Judgment and the Comers' Cross Motion for Summary Judgment must be denied.

### D. *The Post–Petition Liens—1982, 1983*

■ The government argues that with regard to the 1982 and 1983 tax years, the United States had not yet assessed taxes against the Comers at the time of their bankruptcy proceedings. Thus, the government argues that the bankruptcy did not discharge those liabilities, and therefore, judgment may be obtained against defendants personally for those years. (Pl.'s Mot., 13) The Comers argue that the government's liens for the 1982 and 1983 tax years attach only to the Comers' post-petition acquisitions. The Comers also contend that the government should be limited to collect the value of the Comers' estate listed in the bankruptcy schedules, $1,000. (Defs.' Resp., 15–20)

In all the cases cited by the Comers, the post-petition liens attached to property that was either included in the bankruptcy estate or was acquired after the bankruptcy petition was filed. *In re Fuller,* 134 B.R. 945, 948 (9th Cir. BAP 1992); *In re Connor,* 27 F.3d 365, 366–67 (9th Cir.1994); *In re Leavell,* 124 B.R. 535, 536–37 (Bankr.S.D.Ill. 1991). Though the Comers possessed the underlying property at the time they filed bankruptcy, it was not listed on the bankruptcy schedules, and it did not pass through the bankruptcy estate. Instead, the Comers filed a claim in U.S. District Court arguing that the property was part of a trust, outside of the bankruptcy. The general rule is that a pre-petition lien for dischargeable taxes

does not attach to post-petition acquisitions. *Fuller*, 134 B.R. at 947–48. Here, the tax liens for 1982 and 1983 were filed post-petition against the underlying property which was acquired pre-petition. Since the underlying property was not listed on the schedules as part of the bankruptcy estate, and thus the property did not pass through the bankruptcy estate, I suggest that the Comers are not entitled to use the shield of pre-petition and post-petition limitations to prevent the government from enforcing the liens.

█ The Comers contend that the government should be limited to collecting the value of the Comers' estate listed in the bankruptcy schedules ($1,000), and they argue that the tax penalties were discharged in bankruptcy. However, as mentioned, the underlying property did not pass through the bankruptcy proceeding, and therefore, I suggest that the government is not limited to collecting the value of the bankruptcy estate. Furthermore, tax penalties on non-dischargeable taxes are non-dischargeable themselves. 11 U.S.C. § 523(a)(7)(A); *McKay v. United States*, 957 F.2d 689, 693 (9th Cir.1992). Since I have suggested that the Comers' taxes may not have been discharged under 11 U.S.C. § 523(a)(1)(C), then I suggest that the penalties may likewise be non-dischargeable.

### E. *Appreciation in the Value of the Property*

█ The government argues that any appreciation in the value of the underlying property accrues to the benefit of the United States as a lien holder. (Pl.'s Mot., 13) Accordingly, the government argues that it is entitled to foreclose its federal tax liens, sell the subject property, and retain all amounts in excess of the balance on the land contract to satisfy its federal tax liens. (Pl.'s Mot., 13–14) The defendants respond that the government's reliance upon the Supreme Court opinion for this proposition is misplaced in that the Supreme Court examined a different bankruptcy statute than involved in this case. (Defs.' Br., 20–25)

In *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the plaintiff argued that the amount of money owed to the defendants exceeded the value of the land that defendants had placed under lien, and therefore, the bankruptcy court should reduce the lien to the value of that property. The Supreme Court stated that under this approach, the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale, and any increase would accrue to the benefit of the debtor, resulting in a "windfall" to the debtor. *Dewsnup*, 502 U.S. at 417, 112 S.Ct. 773. The Supreme Court held that a creditor's lien stays with the real property until the foreclosure, and therefore, any increase in valuation during the pendency of the bankruptcy rightly accrues to the benefit of the creditor. *Id.*

Under *Dewsnup*, I suggest that the Comers' arguments on this issue fail, and any appreciation in the value of the underlying property involved in the instant matter accrues to the benefit of the United States as a lien holder. While the Supreme Court examined a different bankruptcy statute than that involved here, I suggest that the underlying policies in *Dewsnup* are just as applicable here. Just as in *Dewsnup*, if the government is limited to a lien equal to the value of the property at the time the lien was placed, then the Comers would be in a position to receive a windfall, i.e., the Comers would gain any excess amount on the sale, despite the fact that the government could conceivably be left underpaid for the Comers' legitimate tax obligations. Therefore, I suggest that the United States, if it proves its case, should be permitted to sell the subject property and retain all amounts in excess of the balance on the land contract to the extent that it satisfies any federal tax liens.

### F. *Wayne and Carolyn Schulz*

The defendant Comers purchased the underlying subject property on a land contract from Wayne and Carolyn Schulz. (Pl.'s Mot., 14) Although they were served with notice joining them as parties to this action on or about October 24, 1996, Wayne and Carolyn Schulz failed to answer or move with respect to the complaint. Consequently, on March 3, 1998, the Clerk of the Court entered default

against them. (Dkt. 64) One day later, an attorney representing the Schulzs filed a Motion to Dismiss. (Dkt. 65)

These defendants presently have not sought to set aside the Clerk's Entry of Default. More importantly, these defendants have not explained why it took them nearly 16 months to file any form of response to the government's complaint, and now, with less than one month before the scheduled commencement of jury trial, these defendants have filed a motion to dismiss (in the process, the attorney having neglected to file any form of appearance before this court). Because of their default, I suggest that summary judgment should be granted against these individuals, foreclosing any interest that they may claim to the property.

## IV. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981), *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Smith v. Detroit Fed'n. of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.